UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GLADYS CLAUDETTE SUTTON, :
Individually and as Personal :
Representative of the Estate and Next of Kin of :
ANGEL CLAUDETTE WALTERS, Deceased :
:
    Plaintiff, : Civil Action No.:07- 01197 (JDB)
:
v. :
:
WASHINGTON METROPOLITAN AREA :
TRANSIT AUTHORITY, :
:
    Defendant. :

## MEMORANDUM OF LAW IN SUPPORT OF DISCLOSURE OF REPORTS

Pursuant to this Court's instructions during the telephone conference with all parties on December 11, 2007, the Plaintiff submits the following Memorandum of Law in support of her position that Defendant Washington Metropolitan Area Transit Authority ("WMATA") should produce un-redacted copies of the Accident Report Form dated March 19, 2007 and the Department of System Safety and Risk Management Interim Investigation dated February 18, 2007, attached hereto as Exhibits 1 and 2, respectively. In support of her position, Plaintiff states as follows:

**I.**    **Factual Background**

On February 17, 2007, 21 year old Angel Walters was struck and killed by a Metrobus at the 1300 block of Congress Street, S.E. Ms. Walters had just exited from a vehicle and was standing next to the vehicle. According to a surveillance video that captured the incident, Ms. Walters was standing next to the vehicle for approximately 6 seconds prior to being struck by the Metrobus. WMATA contends that its driver never saw Ms. Walters prior to the impact. The Metrobus was operated by Brenton L. Fairnot, who had worked for WMATA for approximately

1

one year at the time of the incident. On July 2, 2007, Gladys Sutton, the mother of the deceased, filed a wrongful death claim and survival action against WMATA.

## II.     Documents at Issue

### A.     Accident Report Form

WMATA produced the Accident Report Form that was completed by Supervisor David Crawford on March 19, 2007. *See*, Exhibit 1. WMATA redacted three sections from the report.[1] The first redacted section is entitled "Accident Record for the Past 365 Days," which according to WMATA's counsel contains the driving history of the Metrobus Operator Brenton L. Fairnot. The second redacted section is entitled "Action Taken by the Division Superintendent or Supervisor," which presumably details any disciplinary action that was taken against the operator. The third redacted section is entitled "1. Summary of Employee Statement. 2. Interviewer's Instructions to Employee. 3. Interviewer's Rationale for Conclusion Reached."

### B.     Interim Investigation Report

WMATA also produced the Department of System Safety and Risk Management Preliminary Investigation and Interim Investigation report dated February 18, 2007 and updated on February 24, 2007. *See*, Exhibit 2. WMATA redacted a portion of the second page of the Interim Investigation report. The redacted portion falls under the section heading "Findings."

## III.    Argument

WMATA claims that the redacted sections of these reports are protected under the self-evaluative privilege and the work product doctrine. As discussed below, these privileges are not applicable to the redacted sections and should be produced in their un-redacted form.

---

[1] During the telephone conference with the Court on December 11, 2007, counsel for the Plaintiff referred to the first two redacted sections of the report, but did not address the third

2

*A.      The Self-Evaluative Privilege Is Not Applicable to the Redacted Reports*

The self-evaluative privilege, as recognized by the District of Columbia in *Bredice v. Doctors Hospital*, 50 F.R.D. 249, 251 (D.D.C. 1970), was held applicable to WMATA safety evaluations in *Gilbert v. WMATA*, C.A. 85-535. *See also, Wainwright v. WMATA*, 163 F.R.D. 391, 396 (D.D.C. 1995). The Court in *Bredice* held that critiques that are "retrospective with the purpose of self-improvement, are entitled to a qualified privilege on the basis of overwhelming public interest." *Bredice v. Doctors Hospital*, 50 F.R.D. 249, 251 (D.D.C. 1970). In *Gilbert*, the Court weighed the public policy in favor of evaluations and safety improvements against the plaintiff's need for the material sought to determine whether this privilege applies. *Wainwright v. WMATA*, 163 F.R.D. 391, 396 (D.D.C. 1995).

In this case, it is believed that the Accident Report Form and the Interim Investigation report were completed in the normal course of business as part of a routine investigation following an incident involving a Metrobus. WMATA has failed to demonstrate that the opinions and conclusions that are contained in the reports are for "the purpose of self-improvement." *Bredice*, 50 F.R.D. at 251. The "Accident Record for the Past 365 Days" section of the Accident Report Form does not contain any opinions or conclusions. It merely contains the Metrobus operator's driving history, which is not protected by any privilege that WMATA has asserted. The "Action Taken by the Division Superintendent or Supervisor" section of the Accident Report Form indicates what, if any, disciplinary action was taken against the operator. This does not necessarily contain opinions or conclusions regarding how or why this incident occurred. It is unclear what rationale there is for redacting the Interim Investigation report as the subsection heading before the redaction section says, "Findings," and the preceding bullet points are factual findings and observations. Therefore,

---

redacted section of the report. Plaintiff seeks disclosure of the entire report.

3

the Accident Report Form and the Interim Investigation report should be produced to Plaintiff in their un-redacted form.

  *B.*  *Substantial Need*

  Furthermore, Plaintiff has a substantial need for the information that is contained in these reports. The Metrobus Operator said that he did not see anything until after her struck the deceased. There are no eyewitnesses to this incident. There is a surveillance video of the incident, but it was taken from far away. There was a camera on the Metrobus that would have captured the incident, but there was no hard drive in the camera and so no images of the incident were recorded. Plaintiff has a substantial need to get information from WMATA, which relates in any way as to how this incident occurred. Upon information and belief, WMATA has classified this incident as a non-preventable accident. However, WMATA Street Supervisor Norman Williams, at his deposition, testified that this was a preventable accident. *See*, Deposition of Norman Williams, p. 77, lines 5-8 (attached as Exhibit 4). Plaintiff wants to explore the apparent inconsistency within WMATA as to whether or not this accident was preventable and the factors that lead to the incongruent assessments.

  *C.*  *The Work Product Doctrine Does Not Bar Discovery of the Reports*

  WMATA also asserts the work product doctrine as a reason why the redacted information should not be disclosed. "Materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this doctrine." *Johnson v. WMATA*, 1990 WL 113877 (D.D.C. 1990) (citations omitted) (attached hereto as Exhibit 3). In this case, there is no evidence that WMATA prepared the Accident Report Form or the Interim Investigation report in anticipation of

4

litigation. Both reports were completed by March 19, 2007. This lawsuit was not filed until July 2, 2007. WMATA routinely investigates incidents involving its Metrobuses and routinely prepares these reports in the course of such investigations. Even if WMATA conducts these routine investigations with the possibility that it might be sued in mind, it does not change the fact that these reports are compiled in the ordinary course of business. *Id.* The reports were generated in the ordinary course of business, and therefore are not protected by the work product doctrine. Furthermore, as discussed *supra*, Plaintiff has substantial need for the information contained in these reports. *See, Id.*

### IV.   Conclusion

The Plaintiff respectively requests that this Honorable Court order WMATA to produce un-redacted copies of the Accident Report Form dated March 19, 2007 and the Department of System Safety and Risk Management Interim Investigation dated February 18, 2007.

Respectfully submitted,

CARR MALONEY P.C.

By:   /s/ Kelly M. Lippincott
Paul J. Maloney, Esquire
D.C. Bar No. 362533
Kelly M. Lippincott, Esquire
D.C. Bar No. 484610
1615 L Street, N.W., Suite 500
Washington, D.C. 20036
(202) 310-5500 (telephone)
(202) 310-5555 (facsimile)

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Memorandum of Law in Support of Disclosure of Reports was e-filed and served electronically this 13th day of December, 2007, to:

> Fredric H. Schuster, Esq.
> David J. Shaffer, Esq.
> Assistant General Counsel
> Washington Metropolitan Area
>  Transit Authority
> 600 Fifth Street, N.W.
> Washington, D.C. 20001

> /s/ Kelly M. Lippincott
> Kelly M. Lippincott

# ACCIDENT REPORT FORM

**metro**

| 1. FORM HEADED UP BY: (INITIALS) | 2. DIVISION / SECTION | DIVISION CODE | BUSV / SAFETY |  |  |
|---|---|---|---|---|---|
| PAN | BTRA / SETR | 3223 / 3310 | PED |  |  |

| 3. DATE OF ACCIDENT: | TIME: | VEHICLE NUMBER: | RUN NUMBER: | BLOCK NUMBER: | ROUTE NUMBER: |
|---|---|---|---|---|---|
| 02/17/07 | 11:10 PM | 3941 | 528 | SW-06 | W-2 |

| 4. LOCATION OF ACCIDENT: | AREA: | DESTINATION: |
|---|---|---|
| On Congress Street @ 13th Place | DC/SE | Washington Overlook |

| 5. EMPLOYEE INVOLVED: | EMPLOYEE NO.: | JOB STATUS: NEW SERVICE ☐ FULL TIME ☒ PART TIME ☐ | SENIORITY: | DATE OF BIRTH: |
|---|---|---|---|---|
| Fairnot, Brenton Lamont | 007354 |  | 01/20/06 | 10/17/68 |

**ACCIDENT RECORD FOR THE PAST 365 DAYS**

## REDACTED

### INVESTIGATION BY THE DIVISION SUPERINTENDENT OR SUPERVISOR

| 6. DID YOU VISIT THE SCENE OF THE ACCIDENT? | YES ☐ NO ☒ | DATE: / / | TIME: |
|---|---|---|---|
| 7. IF NOT, ARE YOU THOROUGHLY FAMILIAR WITH SCENE OF THE ACCIDENT | YES ☒ NO ☐ |  |  |
| 8. DID YOU INSPECT THE EQUIPMENT INVOLVED? | YES ☐ NO ☒ | DATE: / / | TIME: |
| 9. WHO WAS PRESENT AT THE TIME OF INSPECTION? |  | N/A |  |
| 10. WAS A BRAKE TEST PERFORMED? | YES ☐ NO ☒ | DATE: / / | BRAKE READINGS: |
| 11. WAS A TRAFFIC CITATION ISSUED? | YES ☐ NO ☒ | IF SO TO WHOM? |  |

| 12. EMPLOYEE PERMIT NUMBER | STATE | CLASSIFICATION | EXPIRATION DATE | RESTRICTIONS: |
|---|---|---|---|---|
| F-653-098-488-800 | MD | A ③ C D E ⓟ | 10/17/11 | NONE |

| ACTION TAKEN BY THE DIVISION SUPERINTENDENT OR SUPERVISOR | EXPIRATION DATE DOT CARD |
|---|---|
|  | 11-02-07 |

## REDACTED

| SUPV. SIGNATURE: | TITLE: | DATE: |
|---|---|---|
| [signature] David Crawford | Superintendent | 03/19/07 |

**I CERTIFY THAT THE ABOVE HAS BEEN CALLED TO MY ATTENTION TODAY**

| EMPLOYEE SIGNATURE: [signature] | PAYROLL: 007354 | DATE: 3/19/07 |
|---|---|---|

NOTE: REMARKS MAY BE WRITTEN IN THE SPACE PROVIDED ON THE SECOND PAGE OF THIS FORM. THIS MUST BE DONE AT THE TIME THE REPORT IS SIGNED BY THE EMPLOYEE CONCERNED.

3.296 (Rev 11/18/04) (S.L.S.) | Original - BUSV/SAFETY   1st Copy - DIVISION   2nd Copy - EMPLOYEE   3rd Copy - UNION

**DEFENDANT'S EXHIBIT**

Metrobus #3941 was traveling Eastbound on Congress Street in the travel lane. The Pedestrian was standing Eastbound on Congress Street on the outside of the left rear door of a parked Black 1999 Cadillac SUV, DC Tag #CR-4537.

Operator Fairnot stated that he was traveling approximately 25 to 30 mph, and the Pedestrian came out of nowhere from the right side. The Operator said he did not know if she came from between cars, and he did not see her until he felt the impact. The Pedestrian disappeared after the impact and he hit the brakes and stopped the bus. The Operator notified Central Control, but they did not respond right away. The Operator then called 911 from his Cell Phone. He attempted to get off the bus, but there was a hostile crowd outside the bus. They were yelling that he had just hit someone. The Operator then stepped back on the bus, closed the doors and informed Central Control what had happened.

There was no statement given from the pedestrian (Ms. Walters). Ms. Walters was transported before the arrival of the Supervisor.

Witnesses statements given to Senior Supervisor Berry and Transit Police Officer Ferrell, Dewin #440.

(1). Letita A. Kirkland stated that they had just finished shopping at Wal-Mart, and were returning to Ms. Walters' home. As she parked her vehicle, Ms. Walters retrieved her items and exited the vehicle and was standing outside of the rear door on the driver's side. She was in view in the driver's side mirror. Ms. Kirkland also stated that she exited the vehicle and notice that Ms. Walters was gone as the bus was passing. She looked behind the rear of the S.U.V. and did not see her. She looked again and saw Ms. Walters laying in the Middle of the Street.

(2). Garnisha M. Valentine stated that she was retieving her items from the rear of the truck and the bus passed by very fast and hit Ms. Walters.

(3). Witness 3 stated that she was sitting in the rear seat of the right side waiting to exit the vehicle, when the bus passed very fast and hit Ms. Walters, knocking her to the street.

The right front corner and bumper of the bus made contact to the front left side of Ms. Walters. There was no damage to the bus. Ms. Walters sustained unknown injuries; but later expired.

Detective Washington, Wayne #D 2370 of the Metropolitan Police Department Major Crash Unit responded to the scene; a report was taken (attached is a copy of the report); no charges; one reported injury (Fatality). Operator Fairnot was transported to the 7th District for a Drug and Alcohol Screening and later he was transported to J.G.B. (WMATA) for a Post Incident Medical Examination.

EMPLOYEE'S COMMENTS

1. SUMMARY OF EMPLOYEE STATEM[REDACTED]
2. INTERVIEWER'S INSTRUCTIONS TO EMPLOYEE
3. INTERVIEWER [REDACTED] TIONALE FOR CONCLUSION REACHED

Case 1:07-cv-01197-JDB   Document 10   Filed 12/13/2007   Page 9 of 19

# REDACTED

**EMPLOYEE'S COMMENTS**

13.29613 (05/96) (G.J.)   Use Separate Sheet If More Space Is Needed

# Department of System Safety And Risk Management
## Bus/Pedestrian Fatality
### Preliminary Investigation
### February 17, 2007



Photo #1 – shows the point of impact just outside of the sedan and truck.

**Description:**
On February 17, 2007, at approximately 11:09 p.m., the operator of Bus #3941 notified BOCC, that he had been involved in an accident on Congress Street, SE, (1300 Block) Washington, DC. SSRM was notified at 11:46 p.m. and reported to the location to investigate.

**Findings:**
- The operator was traveling northbound on Congress Street, SE, in revenue service when he struck a female pedestrian.
- The female pedestrian was transported by ambulance to Medstar, where she expired.
- Metropolitan Police Department's investigators determined the point of impact was near the front left bumper of the parked SUV and the left rear bumper of the auto, as show in Photo #1.
- There were no passengers on the bus at the time.
- The final resting place of Bus #3941 was 80 feet from the point of impact and the rear bumper of the bus.
- The operator was taken into custody but not charged pending further investigation.
- This investigation is still pending.

**Personnel at Scene:**
W. Berry – BTRA Senior Supervisor
D. Crawford – S.E. BTRA Superintendent
S. Doddy – Transit Police
MPD – #6724
A. Fields - SSRM – Safety Officer

Report by:
A. Fields
February 18, 2007





```
┌─────────────────────┐
│ SUV passenger in    │──── The Metropolitan Police
│ path of bus         │     Dept. Major Crash
└─────────────────────┘     Investigation Unit concluded
          │                 that the pedestrian stepped
          ▼                 in front of the bus.
    ( Bus strikes SUV )
    ( passenger @     )
    ( 23:09 PM        )
          │
          ▼
┌─────────────────────┐
│ The Operator states │──── He then saw an
│ that he felt an     │     indeterminable object
│ impact,             │     in the view of the mirror,
└─────────────────────┘     and applied the brake.
          │
          ▼
┌─────────────────────┐
│ Operator pushed     │──── Operator called
│ PRTT and received   │     911 @ 23:10.
│ no response.        │
└─────────────────────┘     BOCC responded
          │                 to 3941's call.
          ▼
┌─────────────────────┐
│ Medic #33           │──── Medic #33
│ ambulance           │     transported the
│ responded to the    │     pedestrian to
│ scene.              │     Medstar.
└─────────────────────┘
                            The pedestrian
                            was pronounced
                            dead @ 23:49.
```

# Department of System Safety And Risk Management
## Bus/Pedestrian Fatality
### Interim Investigation
### February 17, 2007



Photo #1 – shows point of impact just outside of the sedan and truck as per MPD.



Photo #2 – shows alleged the point of impact as per witness statement.

**Description:**
On February 17, 2007, at approximately 11:09 p.m., the operator of Bus #3941 notified BOCC, that he had been involved in an accident on Congress Street, SE, (1300 Block) Washington, DC. SSRM was notified at 11:46 p.m. and reported to the location to investigate.

**Findings:**
- The operator was traveling northbound on Congress Street, SE, in revenue service when he struck a female pedestrian.
- The operator stated that the bus was traveling at approximately 25-30 MPH.
- As per the BOCC Number One report, the female pedestrian stepped out into the street after getting out of the left rear door of the parked SUV while carrying boxes.
- The female pedestrian was wearing a dark colored coat.
- The female pedestrian was transported by ambulance to Medstar by Medic #33, where she pronounced deceased.
- Witness recorded statements indicated that the pedestrian was at the rear of the drivers side of the SUV with packages in hand.
- There was snow and ice in the immediate area where the pedestrian was struck as noted in the field sketch.
- The SUV was parked on a mound of ice.
- There were no passengers on the bus at the time.
- The final resting place of Bus #3941 was 80 feet from the point of impact and the rear bumper of the bus.
- Bus #3941 was equipped with a camera, but did not have recording media.
- The operator was interviewed, but not charged pending further investigation.
- Owner of the SUV is a WMATA Bus Operator from the Northern Division.
- The bus was taken to Southeast Bus Garage for further investigation
- MPD determined that the bus did not roll over the pedestrian.
- This investigation is on-going to determine actual point of impact.

Department of System Safety And Risk Management
Bus/Pedestrian Fatality
Interim Investigation
February 17, 2007

# REDACTED

**Personnel at Scene:**
W. Berry – BTRA Senior Supervisor
D. Crawford – S.E. BTRA Superintendent
S. Doddy – Transit Police
MPD – #6724
A. Fields - SSRM – Safety Officer

Report by:
A. Fields
February 18, 2007
Updated by R. Edwards
February 24, 2007

Westlaw.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1990 WL 113877 (D.D.C.)  
**(Cite as: Not Reported in F.Supp.)**

Page 1

Johnson v. Washington Metropolitan Area Transit Authority  
D.D.C.,1990.  
Only the Westlaw citation is currently available.  
United States District Court, District of Columbia.  
Eleanor T. JOHNSON, et al., Plaintiffs,  
v.  
WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant.  
CIV. A. No. 86-3110-LFO.

July 26, 1990.

*MEMORANDUM AND ORDER*  
OBERDORFER, District Judge.  
\*1 Plaintiffs move for an order compelling defendant to produce witness statements elicited by defendant WMATA's investigators from eleven witnesses at, or within six days of, the time of the tragic accident at issue on the merits here. When plaintiffs originally requested the statements, defendant refused to produce them on the ground that they were protected from discovery by the work product doctrine. Defendant now opposes the motion on the same theory and argues that they were not obtained as part of defendant's routine investigative procedures, but were taken solely at defendant's direction in anticipation of litigation.

The matter was originally referred to Magistrate Patrick Attridge who in a series of rulings directed production to plaintiffs of incident and accident reports prepared by defendant's employees and presentation of the witness statements for inspection *in camera.* By Order dated December 1, 1987, the Magistrate declined to order production of the statements because defendant had already provided plaintiffs with the name and address of each witness. Since plaintiffs could interview the non-employee witnesses so named, Magistrate Attridge reasoned, plaintiffs had no "substantial need" for the statements taken and retained by defendant.

Thereafter, plaintiffs sought *de novo* action in this Court on its motion to compel production of the statements by non-employee witnesses. However, the award of summary judgment for defendant appeared to moot the issue raised by defendant's refusal to produce the witness statements. *See* Order dated January 27, 1988; *see also* Memorandum dated February 5, 1988. The Court of Appeals' reversal of the summary judgment revives the issue with respect to the non-employee witness statements. *See Johnson v. Washington Metro. Area Transit Auth.,* 883 F.2d 125 (D.C.Cir.1989).

Although the parties argued to the Court of Appeals the denial of the motion to compel, that Court discussed, but did not decide, the issue. It suggested that this Court consider the issue further, observing:

[T]he trial court might want to reconsider its decision not to compel the production of the statements made by non-employee witnesses to WMATA investigators at the scene. Only defendants and the police, not plaintiffs, had representatives at the scene of the accident. Moreover, while plaintiffs had legal access to the names of witnesses questioned by police, not all the witnesses questioned by WMATA were questioned by the police and WMATA refused to turn over even its witness list to plaintiffs until ordered to by the court one and one-half years later. These statements may contain additional information on the time and distance question, or others in the case such as the demeanor of the train operator. Such contemporaneous statements cannot be replicated by subsequent discovery.

*Id.* at 132.

On reflection, this Court is persuaded that in the circumstances here defendant is obligated to produce the non-employee witness statements previously withheld. To bar discovery under the work product doctrine, [FN1] WMATA must show that the statements were "prepared in anticipation of litigation." Fed.R.Civ.Proc. 26(b)(3). Plaintiffs must also be unable to demonstrate, first, a "substantial need" for the documents and, second, that they could not procure equivalent evidence without "undue hardship." *Id.*

\*2 WMATA fails to prove the documents sought were prepared in anticipation of litigation. According to the Advisory Committee's comments, "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not



© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-01197-JDB    Document 10    Filed 12/13/2007    Page 16 of 19

Not Reported in F.Supp.
Not Reported in F.Supp., 1990 WL 113877 (D.D.C.)
(Cite as: Not Reported in F.Supp.)

Page 2

under the qualified immunity provided by this doctrine." Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery, 48 F.R.D. 487, 501 (1970). In this case, there is no evidence WMATA paid specific attention to prospective litigation. WMATA routinely investigates "[f]atalities and personal injuries that may or may not be a direct result of train, bus or facility related accidents/incidents." See Defendant's Exhibit 2, "Washington Metropolitan Area Transit Authority Office of Safety and Fire Protection," at 2. Although there is some dispute as to whether the regulations exclude suicides from such investigations, plaintiffs have presented unrebutted testimony from WMATA's manager of safety and fire protection that such investigations are routinely made in connection with suicides. See Deposition of Robert W. Wood, Jr. at 9-10, 16.

WMATA's claim that it is routinely sued and always acts with that possibility in mind does not affect the fact that the witness statements were collected in the ordinary course of business. In spite of similar claims, routine accident reports by railroads are discoverable. See, e.g., Rakus v. Erie-Lackawanna R. Co., 76 F.R.D. 145 (W.D.N.Y.1977). The underlying principle was cogently stated by this Court: "The mere contingency that litigation may result is not determinative." Janicker v. George Washington University, 94 F.R.D. 648, 650 (D.D.C.1982); see also Sham v. Hyannis Heritage Hotel, Inc., 118 F.R.D. 24 (D.Mass.1987). Absent a showing that its investigations were made primarily for the purposes of future litigation, WMATA's conclusory assertions cannot protect the witness statements from discovery.

Furthermore, the Court of Appeals hinted, and the developing record confirms, that, even if the statements were work product prepared in anticipation of litigation, the witness statements would nonetheless be producible. Plaintiffs have shown substantial need for the statements in question. Courts have often noted that contemporaneous statements are "unique and can never be duplicated precisely." Gillman v. United States, 53 F.R.D. 316, 319 (S.D.N.Y.1971) (citation omitted); see also McDougall v. Dunn, 468 F.2d 468, 472-76 (4th Cir.1972).

[S]tatements taken from the witnesses shortly after the accident constitute 'unique catalysts in the search for truth'... in that they provide an immediate impression of the facts that cannot be recreated or duplicated by a deposition that relies upon memory, and many courts have held that the mere lapse of time in itself is enough to justify production of the statements.

Southern Ry. Co. v. Lanham, 403 F.2d 119, 128 (5th Cir.1968) (citations omitted). This widespread judicial "notion that memory fades with the passage of time is amply supported by psychological studies, as well as by common sense." C. Wright & A. Miller, 8 Federal Practice and Procedure § 2205, at 223 & n. 86 (1970) (citations omitted).

*3 Plaintiffs have also shown undue hardship. It has now been four years since the accident occurred. The difficulty, indeed impossibility, plaintiffs would encounter in reconstructing the contemporaneous impressions of the witnesses is manifest. WMATA contends, however, that plaintiffs had the opportunity to collect such impressions. The Court of Appeals suggested this contention is fanciful because WMATA refused to turn over the names of many witnesses for a year and one-half. See Johnson v. Washington Metro. Area Transit Auth., 883 F.2d at 132. Moreover, even if plaintiffs had been in possession of the witness list soon after the accident, without the investigative resources of a public agency it would have taken plaintiffs weeks to track down and depose the witnesses. By the time much of the testimony would have lost its freshness and usefulness. Scientific "authorities indicate that the sharpest drop in a witness' ability to recall a scene or an event occurs shortly after he witnesses it-certainly within a day or two," Hamilton v. Canal Barge Co, Inc., 395 F.Supp. 975, 977 (E.D.La.1974) (citations omitted). Given the suddenness of the events at issue and the difficulty witnesses have had in reconstructing the events, a lapse of even several weeks, and the concomitant deterioration in recall, would have been damaging in this case. Thus, even under WMATA's demanding standard, plaintiffs would have been unable to secure the "substantial equivalent" of the evidence gathered by the WMATA detectives.

In summary, WMATA's invocation of the work product fails on two grounds. First, WMATA has not shown the statements collected by WMATA investigators immediately after the accident were made in anticipation of litigation. Second, plaintiffs have demonstrated both the substantial need and the undue hardship necessary for discovery of work product.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1990 WL 113877 (D.D.C.)
**(Cite as: Not Reported in F.Supp.)**

Case 1:07-cv-01197-JDB    Document 10    Filed 12/13/2007    Page 17 of 19

Page 3

Accordingly, it is this 26th day of July, 1990, hereby

ORDERED: that plaintiffs' motion should be, and is hereby, granted; and it is further

ORDERED: that counsel for the parties shall attend a status conference to resolve what documents are to be discovered on August 3, 1990 at 9:30 a.m.

> FN1. That doctrine was codified in 1970 and reads in pertinent part:
> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.
> Fed.R.Civ.Proc. 26(b)(3).

D.D.C.,1990.
Johnson v. Washington Metropolitan Area Transit Authority
Not Reported in F.Supp., 1990 WL 113877 (D.D.C.)

END OF DOCUMENT

1

```
 1              UNITED STATES DISTRICT COURT
 2              FOR THE DISTRICT OF COLUMBIA
 3    - - - - - - - - - - - - - - - - x
 4    GLADYS CLAUDETTE SUTTON             :     ORIGINAL
 5    Individually and as Personal        :
 6    Representative of the Estate and    :
 7    Next of Kin of ANGEL                :
 8    CLAUDETTE WALTERS, Deceased,        :
 9         Plaintiff                      :
10    v.                                  :     Civil Action No.
11    WASHINGTON METROPOLITAN AREA        :     07-01197 (JDB)
12    TRANSIT AUTHORITY,                  :
13         Defendant                      :
14    - - - - - - - - - - - - - - - - x
15          Videotaped Deposition of NORMAN WILLIAMS
16                    Washington, D.C.
17                Monday, October 15, 2007
18                       2:40 p.m.
19
20    Job No.: 1-114379
21    Pages 1 through 125
22    Reported by:  Marilyn Feldman, RPR
```

DEFENDANT'S EXHIBIT 4


L.A.D. REPORTING & DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, MD • McLean, VA

77

| | | |
|---|---|---|
| 1 | accident report and they give the statement on the | 16:11:41 |
| 2 | accident report also. So they look at all the facts | 16:11:43 |
| 3 | at hand and determine whether or not it's rated a | 16:11:46 |
| 4 | preventable or nonpreventable accident. | 16:11:50 |
| 5 |     Q    Was this rated preventable or | 16:11:53 |
| 6 | nonpreventable? | 16:11:55 |
| 7 |     A    I don't know what it was rated, but in my | 16:11:56 |
| 8 | opinion it was a preventable accident. | 16:11:59 |
| 9 |     Q    It was preventable? | 16:12:01 |
| 10 |     A    I don't know what they rated it as. | 16:12:02 |
| 11 |     MR. SHAFFER:  Objection to him stating any | 16:12:05 |
| 12 | of his opinions. His opinions aren't at issue in | 16:12:07 |
| 13 | this 30(b)(6). So don't go into your opinions. | 16:12:09 |
| 14 |     THE WITNESS:  Right. I only deal with the | 16:12:13 |
| 15 | facts. I don't know what it's rated. Once it | 16:12:15 |
| 16 | leaves my hand, the division handles it. I don't | 16:12:18 |
| 17 | know what it's rated as. | 16:12:20 |
| 18 | BY MR. MALONEY: | 16:12:21 |
| 19 |     Q    Did you say you thought this was | 16:12:21 |
| 20 | preventable though? | 16:12:23 |
| 21 |     MR. SHAFFER:  Objection, instruct him not | 16:12:26 |
| 22 | to answer. | 16:12:28 |