UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

|  |  |  |
|---|---|---|
| GLADY SUTTON, As Mother and Next Kin of Deceased Daughter, ANGEL WALTERS, | : : : : | |
| Plaintiff, | : : | |
| v. | : : | Case No.: 1:07cv1197 (JDB) |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, | : : : | |
| Defendant. | : | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF,
AND IN OPPOSITION, TO DISCOVERY DISPUTE WITH WMATA**

COMES NOW, plaintiff, by counsel, CARR MALONEY P.C., and provides support for its position or three pending discovery disputes with Washington Metropolitan Area Transit Authority ("WMATA").

## I.    FACTUAL BACKGROUND

On February 17, 2007, 21-year old Angel Walters was struck and killed by a Metrobus at the 1300 block of Congress Street, S.E.  Ms. Walters had just exited from a vehicle, and was standing next to it when she was struck.  A surveillance video captured the incident, and according to the video and plaintiff's expert accident reconstructionist, Ms. Walters was standing next to the vehicle which she had exited for approximately six seconds before being struck by the Metrobus.  WMATA contends that its driver, Brenton L. Fairnot, never saw Ms. Walters prior to impact. However, Mr. Fairnot admitted at deposition that if Ms. Walters was standing in the road for six seconds prior to impact, he should have seen her.  A visibility study conducted by plaintiff's expert accident reconstructionist confirms that Mr. Fairnot should have seen Ms. Walters prior to the accident.

## II.  PLAINTIFF'S REQUEST FOR 30(B)(6) TESETIMONY FROM WMATA

A.    On September 18, 2007, plaintiff forwarded an Amended 30(b)(6) Deposition Notice to counsel for WMATA.  (Exhibit 1).  Item No. 17 of Exhibit 1 requests WMATA to produce a witness who could testify to "the use of 'Safety Is Our Number 1 Priority' decals on WMATA Metro buses before and after the accident."  WMATA apparently had a safety program in place at the time of the instant accident whereby WMATA had placed on all of its buses the decals "Safety Is Our Number 1 Priority."  The bus involved in the current accident had two such decals on it. Plaintiff's intent is to ask a representative of WMATA who came up with the safety program to include the decals, when it was implemented, how it was implemented, how bus drivers were trained with respect to this particular motto, *etc*.  None of WMATA's witnesses have known the answers to these questions, and no witness has been proffered to testify on this topic.  Instead, WMATA takes the position that it will not produce a witness on this topic.

B.    The second issue with the corporate designee for WMATA relates to a request in a letter dated October 3, 2007 (second paragraph). (Exhibit 2).  Specifically, plaintiff requested that WMATA provide a witness on the topic of "All pleadings filed by Washington Metropolitan Area Transit Authority including, but not limited to the Answer, answers to written discovery, and responses to Requests for Admissions."  One reason for this request was that certain factual allegations were included in responses provided by WMATA that appear unsupported by the evidence.  A brief example will suffice.  In WMATA's Response to Request for Admissions (Exhibit 3), WMATA makes the following statements: "decedent attempted to cross the street with her view of the oncoming bus blocked by the numerous packages she was holding."  (Exhibit 3, Response No. 2); "Based upon the circumstances of the accident Ms. Walters could not be seen."

2

(Response Nos. 10 and 11).  None of the WMATA witnesses provide factual support for WMATA's contentions as set forth in these two examples.  Plaintiff is entitled to take the deposition of a witness who can speak for WMATA on the positions taken in pleadings, Answers to Interrogatories, and Response to Requests for Admissions, including but not limited to the two examples herein.  WMATA refuses to produce such a witness.

### III. WMATA'S REQUEST FOR PSYCHIATRIC EXAMINATION FOR AUBRIA WALTERS

Aubria Walters, decedent's daughter, turned six in December 2007.  She was present at the time of the accident involving her mother, although she was asleep in the back seat at the time of impact. She woke shortly thereafter, and witnessed her mother lying in the street.  Needless to say, the accident and the loss of her mother has had a serious impact on her.  Child psychiatrist, Joan Kinlan, M.D., began seeing Gladys Sutton, plaintiff herein and Aubria Walters' maternal grandmother in April/May 2007.  In part, this was related to the impact that the accident was having on Aubria to include her school performance.  In part, Dr. Kinlan will be involved with a claim for custody presented by Aubria's putative father, who is in jail.  Dr. Kinlan took notes of all visits and these notes have been produced to counsel for WMATA.  Dr. Kinlan has also been deposed for approximately six hours after having produced an expert report.  Dr. Kinlan did her work from scratch with little background information.

WMATA has identified a child psychiatrist who wants to conduct interviews for up to nine hours with Ms. Sutton, and six hours with Aubria Walters.  Dr. Haller's office is in Potomac, Maryland, and Ms. Sutton lives with her grandchild, Aubria Walters, at 1721 Montana Avenue, N.E., Washington, D.C.  Depending upon traffic, a one-way visit will take approximately one hour

in the car.

Dr. Haller's requests are extraordinary and unnecessary.  He is, in essence, requesting an independent medical examination of a six year old child.  We have offered up to three hours of interview time for the child and/or the maternal grandmother, Ms. Sutton, and have agreed to do this in Dr. Haller's office in Potomac, Maryland.  Plaintiff views Dr. Haller's requests as unreasonable, oppressive, and unduly burdensome.  Much of the additional information that Dr. Haller requests can be obtained through deposition testimony.  For example, Ms. Sutton has been deposed, and the deposition of Ms. Sutton's family members has been requested and will be arranged.  Similarly, depositions of school teachers, school psychologists, *etc*. can be taken by counsel for WMATA. Any records requested by Dr. Haller can be provided to him by counsel for WMATA through subpoena.  A request for 15 hours of interview time is extraordinary, and plaintiff simply will not agree to it.  An independent medical examination in a typical personal injury case takes no more than approximately one hour.  The three hours allowed under the circumstances here should be sufficient for Dr. Haller to evaluate the minor child.

<div style="margin-left:50%">

Respectfully submitted,

CARR MALONEY P.C.

By:    /s/ Kelly M. Lippincott
Paul J. Maloney, #362533
Kelly M. Lippincott, #484610
1615 L Street, N.W., Suite 500
Washington, D.C.  20036
(202) 310-5500 (telephone)
(202) 310-5555 (facsimile)
pjm@carrmaloney.com
kml@carrmaloney.com

</div>

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was filed electronically on this 24th day of January, 2008 to:

>Frederic H. Schuster, Esquire
>David J. Shaffer, Esquire
>Associate General Counsel
>600 Fifth Street, N.W.
>Washington, D.C.  20001

>/s/ Kelly M. Lippincott_____
>Kelly M. Lippincott

# EXHIBIT 1

exhibits

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GLADYS CLAUDETTE SUTTON,<br>Individually and as Personal<br>Representative of the Estate and Next of Kin of<br>ANGEL CLAUDETTE WALTERS, Deceased | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:07- 01197 (JDB) |
| | : | |
| v. | : | |
| | : | |
| WASHINGTON METROPOLITAN AREA<br>TRANSIT AUTHORITY, | : | |
| | : | |
| Defendant. | : | |

## AMENDED NOTICE OF CORPORATE DESIGNEE VIDEOTAPED DEPOSITION

PLEASE TAKE NOTICE that on **October 9, 2007** at **1:00 p.m.**, pursuant to Federal Rule

of Civil Procedure 30(b)(6), Plaintiff Gladys Claudette Sutton, by counsel, will take the deposition

of Defendant Washington Metropolitan Area Transit Authority ("WMATA"), through one or more

of its designated officers, directors, partners, managing agents, or other persons who consent to

testify on its behalf, by oral examination and by videotape, before a Notary Public, at the law office

of *Carr Maloney P.C., 1615 L Street, NW, Suite 500, Washington, D.C. 20036.*

Defendant WMATA is required to designate one or more of its officers, directors,

partners, managing agents, or other persons who consent to testify on its behalf, in each of the

following areas in regard to the following topics:

1.    The itinerary of the WMATA Metrobus operator on the date of the incident, including the route the operator was driving; where the operator had been prior to the accident; where the operator was proceeding when the accident took place; and the length of time and number of miles the operator had been on the route and/or on duty.

2.    All activities in which the WMATA Metrobus operator was engaged in, which required the use of one or both of his hands, within five (5) minutes of the incident at issue.

3.     All actions the WMATA Metrobus operator took to avoid the collision or warn the decedent.

4.     Any cameras located on the bus, including where they were located on the bus; what they were positioned to view; when they were last tested; the method by which images from the cameras as retained, stored, and destroyed; and WMATA's policies and standards for the use and operations of such cameras.

5.     WMATA's policies and procedures regarding the safe operation of WMATA Metrobuses, including, but not limited to, all policies and procedures for watching for pedestrians, yielding to pedestrians, maintaining a safe and reasonable speed, and adjustment of headlights and mirrors to maximize visibility.

6.     The training the WMATA Metrobus operator has received from WMATA regarding the safe operation of buses *vis-à-vis* pedestrians, yielding to pedestrians, maintaining a safe and reasonable speed, and adjustment of headlights and mirrors to maximize visibility.

7.     All interviews of witnesses to the incident at issue who were interviewed by WMATA personnel or in the presence of WMATA personnel.

8.     All investigations of this incident by WMATA, including any photographs or measurements.

9.     The information contained in the Street Supervisor Accident Report, including how it was obtained, who obtained the information, who recorded the information, and when the information was obtained and recorded.

10.     The information contained in the WMATA Motor Vehicle Accident Report, including how it was obtained, who obtained the information, who recorded the information, and when the information was obtained and recorded.

11.     The information contained in the Supplemental Questions to BUSV Accident Reports, including how it was obtained, who obtained the information, who recorded the information, and when the information was obtained and recorded.

12.     All correspondence, meetings, and communications between Metropolitan Police Department and WMATA, its agents, employees, or representatives regarding the incident at issue.

13.     All repairs made to the bus involved in this accident for the period six months prior to the accident and six months after the accident.

14.     All manuals provided by the seller/manufacturer for operation of the ORION bus involved in this accident.

2

15.     All training instituted by WMATA as a result of pedestrian deaths involving WMATA Metrobuses in 2006 and 2007.

16.     All training materials presented to WMATA personnel at any time as a result of this accident.

17.     The use of "safety is our # 1 priority" decals on WMATA Metro buses before and after the accident.

18.     Any logs maintained for the route in question on the night of this accident.

19.     All records of a call from Mr. Fairnot to WMATA Metrobus personnel on the night of this accident.

20.     All emails or other electronic records as defined in the Federal Rules maintained by WMATA relating to this accident.

21.     The personnel file for Brenton Fairnot.

22.     Pedestrian accidents involving WMATA Metro buses in the ten (10) years prior to this incident.

PLEASE TAKE FURTHER NOTICE that the corporate designee shall be required to bring with him copies of all the following documents, to the extent they have not already been provided to counsel for Plaintiff, all documents identified in WMATA's Answers to Interrogatories, all documents requested in Plaintiff's Request for Production of Documents to WMATA, and all non-privileged documents pertaining to or related to the topics and issues described above.

> GLADYS CLAUDETTE SUTTON, individually
> and as personal representative of the estate
> and next of kin of
> ANGEL CLAUDETTE WALTERS, deceased
> By Counsel

3

Respectfully submitted,

CARR MALONEY P.C.

Paul J. Maloney, Esquire, D.C. Bar No. 362533
Kelly M. Lippincott, Esquire, D.C. Bar No. 484610
1615 L Street, N.W., Suite 500
Washington, D.C.  20036
(202) 310-5500 (Telephone)
(202) 310-5555 (Facsimile)
pjm@carrmaloney.com
kml@carrmaloney.com

4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing *Amended Notice of Corporate Designee Videotaped Deposition* was faxed and mailed, postage prepaid, on this 18th day of September, 2007 to:

Fredric H. Schuster, Esq.
David J. Shaffer, Esq.
Assistant General Counsel
Washington Metropolitan Area
   Transit Authority
600 Fifth Street, N.W.
Washington, D.C. 20001
FAX: (202)-962-2550

Kelly M. Lippincott

# EXHIBIT 2

# Carr Maloney, P.C.

1615 L Street, NW
Suite 500
Washington, DC  20036
(202) 310-5500
FAX (202) 310-5555
www.carrmaloney.com

Tycon Towers
8000 Towers Crescent Drive
Suite 1350
Vienna, VA  22182
(703) 691-8818

The World Trade Center
401 East Pratt Street
Eighth Floor
Baltimore, MD  21202
(410) 752-1570

20 Courthouse Square
Suite 214
Rockville, MD  20850
(301) 424-7024

**Paul J. Maloney**
**(202)310-5505**
Admitted in DC & MD
pjm@carrmaloney.com

October 3, 2007

**VIA EMAIL ONLY**
Frederic H. Schuster, Esquire
David J. Shaffer, Esquire
Associate General Counsel
Washington Metropolitan Area
Transit Authority
600 Fifth Street, N.W.
Washington, D.C.  20001

      RE:    Gladys Sutton v. WMATA, et al.
              Case No.: 1:07cv1197 (JDB)
              <u>Our File No.:  99007DC001</u>

Dear Ric:

     We had noted WMATA's corporate designee by way of videotaped deposition for October 8, 2007 at 1:00 p.m.  My understanding is that this deposition will not go forward on that date. We have held the dates of October 15 and 16 for this purpose.  We can start at 10:00 a.m. on the 15th and 2:00 p.m. on the 16th (Det. Washington is at 10:00 a.m.).  To the extent that Brenton Fairnot will be testifying to any of the categories, please advise in advance of his deposition, which is scheduled for Tuesday, October 9th.

     On a related note, I would ask that you please add one additional designation for a WMATA corporate designee to address.  I would request that you allow a category No. 23 to the Notice of Deposition to encompass the topic of "all pleadings filed by Washington Metropolitan Area Transit Authority including, but not limited to the answer, answers to written discovery, and responses to request for admissions."  If you want me to formally amend the Notice of Deposition, I will do so. Please advise.

Frederic H. Schuster, Esquire
October 3, 2007
Page 2

I would now like to address WMATA's document captioned "WMATA's Objections To Plaintiff's Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6)" ("WMATA Objections"). First, we are agreeable to having the depositions taken at WMATA's main headquarters. Second, we take exception to WMATA's refusal to designate an individual to testify to the following categories, and I will address these in the order presented. I will not repeat the topic and your response in full as WMATA's Objections lays this out in detail. I will try to capture the essence of our request, WMATA's objections, and our position. Please accept this as a good faith attempt to resolve a discovery dispute. If we are unable to do so, we are prepared to have the court intervene pursuant to the procedures set forth at the initial conference.

No. 4: Our request is for a designee to testify to the use of cameras on buses, and policies and procedures with respect to same. WMATA's objection is based on the fact that the bus in question was equipped with a camera, but that no hard drive was on the system and/or there was no film in the camera.

Our position is that we are entitled to know what policies and procedures are in place for WMATA for having operational cameras on their buses. We want to know when the policies were instituted, why they were instituted, and why the camera was not operational in this case. If the camera on the bus in question was intended to assist the driver in viewing pedestrians, or to assist WMATA in evaluating an accident with a pedestrian, we are entitled to this information in discovery. If WMATA failed to follow its internal procedures or regulations, this may have bearing on the standard of care demonstrated by WMATA and/or its driver in this case. (*See, WMATA v. Jeanty*, 718 A.2d 172 (D.C. 1998), *Briggs v. WMATA*, 481 F.3d 839 (D.C. Cir. 2007), *WMATA v. Young*, 731 A.2d 389 (D.C. 1999), *Garrison v. D.C. Transit System, Inc.*, 196 A.2d 924 (D.C. App. 1964), and *Schneider v. D.C. Transit System, Inc.*, 188 F.Supp. 786 (D.C. 1960). In addition to the foregoing reasons, the issue of a use of a camera may be evidence of the foreseeability of a collision between a WMATA bus and a pedestrian, particularly where contributory negligence and assumption of risk have been pled, and where last clear chance may be an issue at trial. In addition, testimony on this topic may be used as evidence to support expert testimony.

No. 5: Plaintiff has asked for the policies and procedures regarding the safe operation of WMATA buses, and in particular, those relating to watching for or yielding to pedestrians, *etc.* WMATA responds that the only relevant issue in this case (excluding decedent's negligence), is whether or not WMATA bus operator, Brenton L. Fairnot was negligent, and whether or not that negligence was the proximate cause of decedent's death and plaintiff's alleged damages. WMATA further contends that the obligations of operators and pedestrians are governed by common law and statutory law, and that Mr. Fairnot and WMATA's obligations are no more, nor less than any other District driver. WMATA relies on *Briggs v. WMATA*, 481 F.3d 839, 848 (D.C. Cir. 2007).

Frederic H. Schuster, Esquire
October 3, 2007
Page 3

WMATA's reliance upon *Briggs* is misplaced. In that case, the mother of a murder victim contended that WMATA failed to take security precautions that resulted in the murder of her son. The court found that plaintiff failed to establish a national standard of care, and that while WMATA's internal regulations may be admissible as bearing on the standard of care, they did not establish the standard of care. *Briggs* at 848. Here, plaintiff will establish the standard of care by common law, statutory law, and by WMATA's policies and procedures that may have a bearing on the standard of care. (See cases cited with respect to topic No. 4). In addition, WMATA's custom and habit and the foreseeability of harm to pedestrians, such as Ms. Walters, are at issue in this case. Five pedestrians were killed in the District of Columbia within a period of nine months in 2006 and 2007, and all of these cases are now in litigation in the U.S. District Court. With respect to drivers and pedestrians, drivers must use ordinary care to avoid injuring others. A reasonable person changes his or her conduct according to the circumstances, and according to the danger he or she knows or should know exists. Therefore, as the danger increases, a reasonable person acts more carefully. Standard Jury Instruction 7.01.

No. 6: With respect to topic number 6, plaintiff has requested someone to testify to the training received by Mr. Fairnot regarding the safe operation of buses vis-à-vis pedestrians, yielding to pedestrians, *etc.* WMATA's response is that WMATA is immune from claims challenging WMATA's hiring, training, and supervision of its employees. For support, WMATA cites to *Burkhart v. WMATA*, 112 F.3d 1207 (D.C. Cir. 1997).

Once again, this reliance widely misses the mark. Plaintiff has not filed a negligent hiring, training or supervision claim. Even though WMATA is immune from a negligent supervision claim, it does not prevent discovery on what training the driver received, particularly where the training may bear directly on issues of liability. It is inconceivable that WMATA has not produced any training manual in response to discovery. Plaintiff is entitled to full discovery on this topic. For reasons stated herein, and with respect to Topic Nos. 4 and 5, WMATA must produce a witness on this topic.

No. 7: Plaintiff has requested a deposition of a WMATA employee to address all interviews of witnesses to the incident at issue who were interviewed by WMATA personnel or in the presence of WMATA personnel. WMATA objects and says it has provided sworn Interrogatory answers, provided initial disclosures, provided all reports, and that other statements are protected as taken in anticipation of litigation.

In order for plaintiff to make an informed decision on whether to proceed with the court on this issue, please advise what the policies and procedures are for conducting accident investigations in the normal course of business, and advise when counsel for WMATA first became involved in this particular investigation. Mr. Fairnot's statement on the night of the accident is critical to plaintiff's prosecution of this case. The Police apparently have a tape recorded statement which we have not heard. Moreover, WMATA's Answers to Interrogatories are specifically **not** based on

Frederic H. Schuster, Esquire
October 3, 2007
Page 4

personnel knowledge. (Answer to Interrogatory No. 1 and signature block). WMATA's Answer to Interrogatory No. 17 makes reference to statements given to WMATA street supervisors Norman E. Williams and Walter E. Berry. There is no indication that counsel was present for these interviews, or that these interviews were conducted other than in the ordinary course of business. There is reference to four statements made that evening by Mr. Fairnot, Ms. Kirkland, Ms. Valentine, and Ms. Ramseur, apparently to Mr. Williams and Mr. Berry. There is also a reference in Interrogatory No. 17 to recorded statements of Mr. Fairnot, Ms. Valentine, and Ms. Kirkland. These were taken on February 21, 2007, by WMATA's Anthony Richardson. There is also a reference to statements on February 17, 2007 by Ms. Kirkland, Ms. Valentine and Ms. Ramseur to Metro Transit Office Edwin Farrow. *Janicker v. George Washington University*, 94 F.R.D. 648 (1982) stands for the proposition that an investigation in an ordinary course of an accident is not normally covered by attorney work product privilege. We also reserve the right to show substantial need and undue hardship pursuant to F.R.C.P. 26(b)(3) since the statements made by witnesses at or near the time of the accident are critical to plaintiff's prosecution of this case.

No. 8: This topic requests all investigations of this accident by WMATA, including any photographs or measurements. WMATA responds by stating that it has provided various documents in discovery. Even though WMATA has produced documents, plaintiff is still entitled to take 30(b)(6) depositions of one or more witnesses who can discuss the investigation, photographs and measurements.

No. 12: This topic relates to correspondence, meetings, and communications between the Police Department and WMATA regarding the incident at issue. WMATA refuses to produce a witness on this topic, but instead indicates that the Police Department file, which it has subpoenaed, has been forwarded in discovery.

There obviously was significant communication between WMATA and the Police Department. To the extent that these communications were done by email, to the extent that there are handwritten notes, telephone messages, memoranda, *etc.*, plaintiff is entitled to the discovery of same. One example will suffice. A. Fields, a WMATA employee, provided an interim investigation for WMATA's Department of System Safety and Risk Management. That document contains a reference to Mr. Fairnot traveling at 25-30 mph; to the female pedestrian wearing a dark colored coat; and to the Metropolitan Police Department determining that the bus did not roll over the pedestrian. All of these topics are relevant in this litigation, and all communications between WMATA and the Police Department are relevant on this, and many other issues presented in the case. Plaintiff is entitled to a corporate deposition from an individual who can address these topics.

No. 13: Plaintiff requested testimony from a corporate designee with respect to all repairs made to the bus involved in this accident for a period of six (6) months prior to the accident and six (6) months after the accident. WMATA objects, and states that it has provided the six month maintenance history prior to the accident.

Frederic H. Schuster, Esquire
October 3, 2007
Page 5

Plaintiff is entitled to the history following the accident to learn if in any way there was a malfunction that caused or contributed to the accident (*e.g.*, camera, headlights, mirrors, *etc.*) While we appreciate the fact that WMATA has concluded that no mechanical involvement caused or contributed to the accident, plaintiff is entitled separately to make this determination, and to question a WMATA designee on this topic.

No. 14: We would like all manuals provided by the seller/manufacturer for the operation of the Orion Bus involved in this accident. WMATA has objected, and indicated that it is overly broad, vague, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence at trial. WMATA also contends that it consists of thousands of pages. Hopefully, we have worked out this disagreement.

I believe that we have reached an understanding that we will have the opportunity to review the Orion manual on October 8th, and determine what pages we wish to copy, if any. From there, plaintiff should be entitled to take the deposition of a WMATA designee on this topic.

No. 15: All training instituted by WMATA as a result of pedestrian deaths involving WMATA buses in 2006 and 2007. By way of objection, WMATA states that the only issues for consideration are whether Mr. Fairnot was negligent on the evening in question, and whether his negligence was the proximate cause of damages claimed.

For reasons stated above, which will not be repeated herein, we believe WMATA is wrong. Training, to include policies and procedures for WMATA, habit and custom, and foreseeability are at issue in this case. This testimony may also form the basis of plaintiff's expert testimony.

No. 16: Plaintiff will agree not pursue this topic by way of a 30(b)(6) deposition.

No. 17: The use of "Safety is our No. 1 Priority" decals on WMATA buses before and after the accident. WMATA has refused to produce a witness on this topic based on responses provided at Request Nos. 5 and 15.

Without restating plaintiff's position as set forth above, plaintiff is entitled to inquire when started, why started, and to obtain documents with respect to the program whereby WMATA decided to place "Safety is our No. 1 Priority" decals on their buses. The decal appears twice on the bus in question. Was this decal intended for the public? Was it intended for the driver? What actions did WMATA take to implement this policy? All of these are fair questions for a corporate designee for WMATA in addition to the reasons previously stated.

Frederic H. Schuster, Esquire
October 3, 2007
Page 6

No. 18: Plaintiff requested manifest logs maintained for the route in question on the night of this accident. WMATA objects based on the fact that the manifest log for the route in question was provided, and that producing a WMATA representative on this issue would be unduly burdensome.

It is unclear why this would be unduly burdensome. I believe this would be a very simple matter, and an issue that could be very easily addressed by a WMATA witness. If I am missing something, please advise.

No. 19: All records of a call from Mr. Fairnot to WMATA bus personnel on the night of this accident. WMATA's response makes reference to "No. 1 Trouble Report (BOCC)" and a reference to Mr. Fairnot's contact at 23:09 on the night of the accident.

Plaintiff is entitled to have a corporate designee testify to any and all other calls from Mr. Fairnot on that night, whether or not the telephone call was recorded, all handwritten notes that may have been taken, *etc.* WMATA's contention that to produce such a person would be unduly burdensome is disingenuous.

No. 20: All emails other electronic documents as defined in the Federal Rules maintained by WMATA relating to the accident. WMATA responds that all documents have already been provided in discovery.

Plaintiff is entitled to take the deposition of a corporate designee with respect to how records are maintained, and how electronic files are maintained. There have been no emails, audiotapes, text messages or other electronic documents produced by WMATA in this case. Plaintiff requested a litigation hold on all electronic documents, and it is inconceivable that not one email has been generated by WMATA with respect to this accident. Has the request been made to search? Plaintiff is entitled to explore these topics at deposition.

No. 21: Plaintiff requested the personnel file for Brenton Fairnot. WMATA contends that the personnel file for Mr. Fairnot is irrelevant.

Plaintiff disagrees. The personnel file for Mr. Fairnot may contain information relating to past history of inattentiveness, a medical condition that could be explored at deposition, and/or other information that could be used to impeach the credibility of Mr. Fairnot at deposition or trial. The admissibility of the personnel file at the time of trial may be a separate issue, but the discoverability of it, and a person to testify to it should be allowed.

No. 22: Plaintiff seeks information concerning pedestrian accidents involving WMATA buses in the ten (10) years prior to this accident. WMATA objects claiming that (1) only Mr. Fairnot's actions on the night of the incident are relevant; (2) WMATA enjoys sovereign immunity from negligent training and other discretionary decisions; and (3) the information is irrelevant and

Frederic H. Schuster, Esquire
October 3, 2007
Page 7

not reasonably calculated to lead to the discovery of admissible evidence at trial.

As indicated above, issues relating to the internal procedures and operations of WMATA relating to pedestrian accidents is relevant to this litigation. In addition, habit and custom for WMATA operators and the foreseeability of pedestrian accidents are relevant issues for this trial. Plaintiff is aware of four prior pedestrian fatalities in the nine months prior to Ms. Walters' death. This topic is not unlike that asked of every corporate defendant in a products liability case where the history of a particular product is at issue, particularly where WMATA has as its slogan "Safety Is Our No. 1 Priority." What it has done to avoid pedestrian accidents, and the number and severity of these accidents, is relevant, at least for discovery purposes.

As you well know, the scope of document requests and discovery in general under the Federal Rules is very broad. Generally, any relevant, non-privileged document is discoverable unless it was prepared in anticipation of litigation, pertains to expert witnesses, or would be unreasonably burdensome to produce. Based on this letter, I would hope that you would reconsider your position as set forth in the pleading captioned WMATA's Objections. If not, I would like to take this up with the court at the earliest opportunity in accordance with the procedure set out at the initial conference.

Sincerely,

Paul J. Maloney

PJM/nog

2007103-NOG-14 (ltr to r schuster)

# EXHIBIT 3

exhibits

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

GLADYS CLAUDETTE SUTTON,                )
Individually and as Personal            )
Representative of the Estate of Angel   )
Claudette Walters, Deceased,            )
                                        )
                    Plaintiff,          )
                                        )       Civil No. 07-CV-01197 (JDB)
                                        )
v.                                      )
                                        )
WASHINGTON METROPOLITAN AREA            )
  TRANSIT AUTHORITY ("WMATA"),          )
                                        )
                    Defendant.          )
                                        )

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

DEFENDANT'S WMATA'S RESPONSES TO
PLAINTIFF'S FIRST REQUESTS FOR ADMISSIONS

WMATA responds to Plaintiff's First Requests for Admissions that these responses are preliminary, based upon the reports, photographs, video and other information currently available. WMATA reserves the right to amend these responses as additional information becomes available through discovery or otherwise.

1.     Admit that Brenton L. Fairnot was operating the Metrobus at the time of the incident on February 17, 2007, with the permission of WMATA and within the course and scope of his employment with WMATA.

RESPONSE: Admitted.

2.     Admit that Angel Claudette Walters was struck by a Metrobus at the

1300 Block of Congress Street, SE in Washington, DC on February 17, 2007.

RESPONSE: Denied as stated. Discovery has just commenced and at this point there are several possible scenarios of how this incident occurred, including decedent suddenly walking out in front of the bus and slipping on ice causing her to fall into or under the passing bus. It appears clear that decedent attempted to cross the street with her view of the oncoming bus blocked by the numerous packages she was holding, and was under the influence of alcohol and marijuana. WMATA admits that on February 17, 2007, a Metrobus and Angel Claudette Walters came in contact with each other.

3.    Admit that Angel Claudette Walters died as a result of the injuries she sustained in the February 17, 2007 incident.

RESPONSE: Admitted.

4.    Admit that Brenton L. Fairnot did see Angel Claudette Walters prior to striking her with the Metrobus on February 17, 2007.

RESPONSE:  See response number 2 above.  WMATA denies that prior to the contact between Ms. Walters and the Metro bus, operator Fairnot saw her. WMATA further denies Ms. Walters could be seen.

5.    Admit that Brenton L. Fairnot did not see Ms. Walters prior to striking her with the Metrobus on February 17, 2007.

RESPONSE:  See response 2 above. Admitted that prior to the contact between Ms. Walters and the Metrobus, Mr. Fairnot did not see her. However,

2

WMATA denies Ms. Walters could be seen.

6.    Admit that Brenton L. Fairnot did not apply the brakes prior to striking Ms. Walters with the Metrobus on February 17, 2007.

RESPONSE: Denied as stated.  During the course of the buses route and before the contact between it and Ms. Walters, operator Fairnot did apply bus brakes.

7.    Admit that Brenton L. Fairnot did apply the brakes prior to striking Ms. Walters with the Metrobus on February 17, 2007.

RESPONSE:  Admitted that during the course of the bus route and prior to the bus coming in contact with Ms. Walters, he did apply its brakes.

8.    Admit that Brenton L. Fairnot did reduce the speed of his vehicle prior to striking Ms. Walters with the Metrobus on February 17, 2007.

RESPONSE:  Admitted that during the course of the bus route and before the bus and Ms. Walters came into contact, Mr. Fairnot did reduce the bus speed.

9.    Admit that Brenton L. Fairnot did not reduce the speed of his vehicle prior to striking Ms. Walters with the Metrobus on February 17, 2007.

RESPONSE: Denied. During the course of the bus route and before the bus and Ms. Walters came into contact, operator Fairnot did reduce the bus speed.

10.    Admit that Brenton L. Fairnot did not swerve or otherwise try to steer around Ms. Walters prior to striking her with the Metrobus on February 17, 2007.

3

RESPONSE: Admitted that prior to the contact between the bus and Ms. Walters operator Fairnot did not swerve or otherwise try to steer around her. Based upon the circumstances of the accident Ms. Walters could not be seen. See response 2 above.

11.    Admit that Brenton L. Fairnot did swerve or otherwise try to steer around Ms. Walters prior to striking her with the Metrobus on February 17, 2007.

RESPONSE: Denied that prior to the contact between the bus and Ms. Walters operator Fairnot did swerve or otherwise try to steer around her. Based upon the circumstances of the accident, Ms. Walters could not be seen. See response 2 above.

11.    Admit that Brenton L. Fairnot did not apply the brakes of the Metrobus until after he struck Ms. Walters on February 17, 2007.

RESPONSE: Denied.  During the course of the bus route and prior to the bus coming in contact with Ms. Walters, operator Fairnot  did apply the bus brakes.  He also applied bus brakes after the contact between Ms. Walters and the bus.

12.    Admit that there were no vehicles parked on the opposite side of the street from where the Metrobus was traveling when it struck Ms. Walters on February 17, 2007.

RESPONSE:  Admitted that post-accident photographs taken some unknown time after the accident do not depict any parked vehicles on the opposite side of

4

the street from where the Metrobus was traveling in the vicinity where Ms. Walters and the Metrobus are believed to have come into contact. WMATA does not know whether or not at the time of the accident itself there were parked vehicles at that location.

13.    Admit that Brenton L. Fairnot was traveling at a speed greater than 15 mph immediately prior to striking Ms. Walters on February 17, 2007.

RESPONSE: Admitted that immediately prior to the contact between the bus and  Ms. Walters, the bus was traveling at a speed greater than 15 miles per hour.

14.    Admit that Brenton L. Fairnot was traveling at a speed greater than 20 mph immediately prior to striking Ms. Walters on February 17, 2007.

RESPONSE: Admitted that immediately prior to the contact between the bus and  Ms. Walters, WMATA currently believes that the bus was traveling at a speed greater than 20 miles per hour.

15.    Admit that Brenton L. Fairnot was traveling at a speed greater than 25 mph immediately prior to striking Ms. Walters on February 17, 2007.

RESPONSE:  Denied that immediately prior to the contact between the bus and  Ms. Walters, the bus was traveling at a speed greater than 25 miles per hour.

16.    Admit that Brenton L. Fairnot was traveling at a speed greater than 30 mph immediately prior to striking Ms. Walters on February 17, 2007.

RESPONSE: Denied that immediately prior to the contact between the bus and Ms. Walters, the bus was traveling at a speed greater than 30 miles per hour.

17.    Admit that Brenton L. Fairnot was traveling at a speed greater than 35 mph immediately prior to striking Ms. Walters on February 17, 2007.

RESPONSE: Denied that immediately prior to the contact between the bus and Ms. Walters, the bus was traveling at a speed greater than 35 miles per hour.

18.    Admit that Brenton L. Fairnot was traveling at a speed greater than 40 mph immediately prior to striking Ms. Walters on February 17, 2007.

RESPONSE: Denied that immediately prior to the contact between the bus and Ms. Walters, the bus was traveling at a speed greater than 40 miles per hour.

19.    Admit that Brenton L. Fairnot was traveling at a speed greater than 45 mph immediately prior to striking Ms. Walters on February 17, 2007.

RESPONSE: Denied that immediately prior to the contact between the bus and Ms. Walters, the bus was traveling at a speed greater than 45 miles per hour.

Respectfully submitted,

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY

_____
Fredric M. Schuster, #385326
David J. Shaffer #413484
Attorney for Defendant WMATA
600 Fifth Street, N.W.
Washington, D.C. 20001
(202) 962-2560

6

## CERTIFICATE OF SERVICE

I certify that on September 26, 2007, a copy of the foregoing Defendant

WMATA's Responses to Plaintiff's First Requests for Admissions was mailed, first

class postage prepaid, to:

Paul J. Maloney, Esq.
Kelly M. Lippincott, Esquire
Carr Maloney, P.C.
1615 L Street, N.W.
Suite 500
Washington, D.C. 20036
Attorneys for the Plaintiff


_____
Fredric H. Schuster

7