UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GLADYS CLAUDETTE SUTTON,                  :
Individually and as Personal              :
Representative of the Estate and Next of Kin of  :
ANGEL CLAUDETTE WALTERS, Deceased         :
                                          :
        Plaintiff,                        :     Civil Action No.:07- 01197 (JDB)
                                          :
   v.                                     :
                                          :
WASHINGTON METROPOLITAN AREA              :
TRANSIT AUTHORITY,                        :
                                          :
        Defendant.                        :

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE*
TO PRECLUDE PLAINTIFF FROM PLAYING OR INTRODUCING THE
<u>911 EMERGENCY COMMUNICATION TAPE</u>**

Plaintiff, by counsel, in Opposition to Defendant Washington Metropolitan Area Transit Authority's ("WMATA") Motion *in Limine* to Preclude Plaintiff from Playing or Introducing the 911 Emergency Communication Tape respectfully requests that this Honorable Court deny the Defendant's Motion. In support of her Opposition, Plaintiff states as follows:

Defendant does not dispute that that the 911 communication tape is admissible as a "present sense impression" and as an "excited utterance" under Fed. R. Evid. 803(1) and (2), respectively. Nor does Defendant dispute that the tape is admissible under Fed. R. Evid. 702 as Defendant's expert, John E. Adams, M.D., considered the tape in reaching his expert opinions.[1] The only basis

---

[1] Defendant provided the 911 tape after it was discovered at deposition in the materials reviewed by Dr. Adams.

1

that Defendant offers to object to the admission of the 911 communication tape is that the tape's "probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403.

A crucial issue in dispute in this case is how long Angel Walters, deceased, was conscious after being stuck by Defendant's Metrobus. Defendant's forensic pathologist opines that Ms. Walters lost consciousness immediately after being struck by the Metrobus, while Plaintiff's expert opines that Ms. Walters was conscious for one to two minutes following being struck by the Metrobus. Although there is eye-witness testimony, the 911 tape is the only evidence which establishes precisely how long Ms. Walters exhibited any signs of consciousness. The mere testimony of the eye-witnesses at the scene cannot establish how long Ms. Walters may have been conscious after being struck by the Metrobus. The 911 tape will allow the jury to hear, in real-time, Quintenette Ramseur's contemporaneous reporting of how Ms. Walters appeared at the scene for the minutes following being struck by the Metrobus. It is the only evidence that can help to establish an exact timeline for how long Ms. Walters was conscious. Even Ms. Ramseur is hesitant to provide a precise time frame for what she witnessed the night of the incident. Instead, she refers to her 911 call as the best way to determine the timing of events. *See*, Deposition Transcript of Quintenette Ramseur, October 16, 2007 ("Ramseur Deposition"), attached hereto as Exhibit A, p. 45, ln. 22 through p. 47, ln. 9.

Defendant also argues that Ms. Ramseur's call to 911, in which she describes the condition of Ms. Walters, should be excluded under Fed. R. Evid. 403 because it contains opinions of a lay witness. Ms. Ramseur does not give opinions during her call – she just gives a description of what she observes on the scene and she responds to inquiries from the 911 operator.

Although Ms. Ramseur is understandably in an emotional state as she reports to the 911 operator the condition of her dying friend, she nevertheless continues to update the operator on the

condition of Ms. Walters. She also gives a clear indication during the call of the precise moment that Ms. Walters stops breathing, thus providing a time table of Ms. Walters' final moments. The tape also provides a recording of what Ms. Walters heard as she was dying in the street, thereby providing insight into what she experienced immediately prior to her death. At the very least, the tape provides support for and is consistent with the testimony of Dr. Revercomb, the medical examiner in the case and Plaintiff's expert on conscious pain and suffering.

There is no basis in law or in fact for Defendant's request that the content of the tape be presented to the jury without playing the actual tape. A transcript will not be able to capture the time frame that the tape provides in real-time. The actual tape must be played for the jury for it to understand the length of time that Ms. Walters exhibited signs of consciousness.

A failure to allow Plaintiff to introduce the 911 tape – the best evidence of Angel Walter's last moments – will unfairly prejudice Plaintiff's case against a clearly negligent bus driver who caused her death. Here, the probative value of the tape far outweighs any possible prejudice to the Defendant. District of Columbia courts have consistently upheld the admissibility of 911 tapes and there are no cases holding otherwise. *See*, *Teasley v. U.S.*, 899 A.2d 124 (D.C. 2006) (holding contents of 911 calls were admissible under excited utterance exception in carjacking case); *Malloy v. U.S.*, 797 A.2d 687 (D.C. 2002) (upholding trial court's decision to admit 911 tape as excited utterance); *Smith v. U.S.*, 666 A.2d 1216 (D.C. 1995) (upholding admission of 911 tape); *U.S. v. Woodfolk*, 659 A.2d 1145 (D.C. 1995) (upholding trial court's determination that 911 tape was admissible as excited utterance); *U.S. v. Alexander*, 331 F.3d 116 (D.C. Cir. 2003) (finding no error in admission of 911 tape).

Therefore, for the reasons discussed above and the entire record in this case, Plaintiff respectfully requests that this Court deny the Defendant's Motion.

Respectfully submitted,

CARR MALONEY P.C.

By: /s/ Kelly M. Lippincott
Paul J. Maloney, Esquire
D.C. Bar No. 362533
Kelly M. Lippincott, Esquire
D.C. Bar No. 484610
1615 L Street, N.W., Suite 500
Washington, D.C. 20036
(202) 310-5500 (telephone)
(202) 310-5555 (facsimile)

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing ***Plaintiff's Opposition to Defendant's Motion in Limine to Preclude Plaintiff from Playing or Introducing the 911 Emergency Communication Tape*** was e-filed and served electronically this 5th day of May, 2008, to:

Fredric H. Schuster, Esq.
David J. Shaffer, Esq.
Assistant General Counsel
Washington Metropolitan Area
 Transit Authority
600 Fifth Street, N.W.
Washington, D.C. 20001

/s/ Kelly M. Lippincott
Kelly M. Lippincott

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COPY

```
                                      )
1    GLADYS CLAUDETTE SUTTON,          )    Civil Action
     Individually and as Personal      )
2    Representative of the Estate      )    No. 07-01197 (JDB)
     and Next of Kin of ANGEL          )
3    CLAUDETTE WALTERS, Deceased,      )
                                       )
4         Plaintiff,                   )
                                       )
5    vs.                               )
                                       )
6    WASHINGTON METROPOLITAN AREA      )
     TRANSIT AUTHORITY,                )
7                                      )
          Defendant.                   )
8    _____)
```

DEPOSITION OF
QUINTENETTE RAMSEUR
Washington, D.C.
Tuesday, October 16, 2007
3:00 p.m.

Job No.: 114495
Pages 1 through 61
Reported by: John L. Harmonson, RPR

EXHIBIT
A



1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425

DEPOSITION OF QUINTENETTE RAMSEUR
CONDUCTED ON TUESDAY, OCTOBER 16, 2007

45

1   she's not responding.  She's not doing anything."
2           And so she told me to put my hands over
3   her chest and compress down on her chest.  She was
4   like, "Do that five times."  I think she said five
5   times.  So I was doing that.
6           And so I'm just like screaming and
7   frantic, but at the same time I'm noticing there
8   is no movement, there is nothing going on, she's
9   not responding.  Her eyes are open and she's just
10  looking to the left.  And that's indicative to me
11  that she's dead, because there was no movement.  I
12  mean no movement.  The whole time that's all I was
13  looking at, was her eyes, because her eyes was
14  moving.  Her mouth was moving and she was with me
15  for a short period, and it was like that, she was
16  gone.  And I knew she was gone.
17          And so I'm screaming at the operator
18  and I'm telling her, "She's not responding."  And
19  so at that moment the ambulance had arrived, and
20  so then I let them take over.
21  BY MR. SHAFFER:
22      Q.  Okay.  I know this is a hard question,

46

1  but can you estimate for me how many seconds that
2  Ms. Walters' eyes were moving around before they
3  became fixed?
4      A.   Well, it's hard to say.  Because
5  again -- I mean, that's an extremely traumatizing
6  event.  So asking me to calculate seconds or
7  minutes or whatever, the only thing -- my best
8  response to that that I can tell anybody is it's
9  all on the 911 tape.  I would rather they listen
10 to the 911 tape, because I'm reporting everything
11 as it's occurring.
12     Q.   Okay.
13     A.   And the 911 operator was on the phone
14 with me even after the ambulance had gotten to
15 her, and I just -- I just know that -- So, I mean,
16 as everything is occurring, I'm reporting it to
17 the 911 dispatcher.  And so if I had to take a
18 guess, I would say about -- all of this probably
19 took about maybe five minutes, maybe more, maybe
20 less.  It's really hard to say because it's like
21 at that moment everything just stood still because
22 it's like, "This isn't happening."

47

1        It's like surreal, like -- like -- this
2   is not -- I mean, I had to keep reminding myself
3   as it's occurring that this is actually happening,
4   like telling myself, "Get a grip, it's happening."
5   But at the same time I'm sitting there also like,
6   "This can't be happening."  So it's like time
7   really just stood still, and guesstimating how
8   much time elapsed during all this is really
9   difficult to say.
10       Q.   I understand.
11            MR. SHAFFER:  Paul, do you have the
12   original exhibits there?
13            MR. MALONEY:  I do.
14            MR. SHAFFER:  I want Detective
15   Washington's report, the one from this morning.
16            MR. MALONEY:  Oh, the one from this
17   morning?
18            MR. SHAFFER:  Yeah, that.  I want her
19   statement.
20            THE WITNESS:  There it is.
21   BY MR. SHAFFER:
22       Q.   I apologize for taking you through

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GLADY SUTTON, As Mother and Next Kin of Deceased Daughter, ANGEL WALTERS,<br><br>      Plaintiff,<br><br>      v.<br><br>WASHINGTON METROPOLITAN AREA TRANSPORTATION AUTHORITY,<br><br>      Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:   Case No.: 1:07cv1197 (JDB)<br>:<br>:<br>:<br>:<br>: |

**O R D E R**

UPON CONSIDERATION of Defendant's Motion *in Limine* to Preclude Plaintiff from Playing or Introducing the 911 Emergency Communication Tape, and Plaintiff's Opposition thereto, it is by this Honorable Court on this ___ day of _____, 2008

ORDERED, that Defendant's Motion be DENIED.

                                                                              _____
                                                                                   Judge

cc:    Paul J. Maloney, Esquire
          Kelly M. Lippincott, Esquire
          Carr Maloney P.C.
          1615 L Street, N.W., Suite 500
          Washington, D.C.  20036

          Frederic H. Schuster, Esquire
          David J. Shaffer, Esquire
          Associate General Counsel
          600 Fifth Street, N.W.
          Washington, D.C.  20001