IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GLADYS CLAUDETTE SUTTON** : <br> : <br> **Plaintiff,** : <br> : <br> v. : <br> : <br> **WASHINGTON METROPOLITAN** : <br> **AREA TRANSIT AUTHORITY** : <br> : <br> **Defendant.** : <br> : | Case No. 07–1197 (JDB) |

**DEFENDANT WMATA'S REPLY TO PLAINTIFF'S OPPOSITION TO WMATA"S MOTION IN LIMINE TO EXCLUDE THE 911 COMMUNICATIONS TAPE**

Plaintiff does not dispute that the element of recoverable damage at issue is "conscious pain and suffering," and not how long decedent lived after being struck by WMATA's bus. Plaintiff recognizes, as she must, that expert medical testimony is required to establish whether decedent was capable of consciousness and had the capacity to feel pain. As such, both parties have designated expert medical witnesses to opine on this complex medical issue. WMATA's expert, John E. Adams, M.D., a forensic pathologist and prior medical examiner, and Plaintiff's expert, Deputy D.C. Medical Examiner and forensic pathologist, Carolyn H. Revercomb, M.D., will opine at trial as to the length of time decedent suffered conscious pain and suffering. Dr. Adams opines decedent suffered at most 2-3 seconds, and Dr. Revercomb opines decedent was consciously suffering between 1 to 2 minutes.

The expert witnesses, not Ms. Ramsuer, will establish the "time line"[1] of any consciousness pain and suffering. Dr. Adams does not rely upon the contents of the 911 tape in reaching, or as a basis of, his opinions. Dr. Revercomb acknowledges that her expert opinions were reached independently of the information contained on the 911 tape and that she did not rely upon the tape in reaching her opinions. Revercomb Dep. at 64-65, Def. Exh. 4. "[M]y opinions I had prior to hearing the tape." Id. at 49. Dr. Revercomb further agrees that lay observations of indicia of life, such as Ramseur's observation of decedent's apparent breathing, is not an indication of consciousness, in the medical sense. Id. at 34, Def.'s Exhibit 4. Likewise, Ramseur's lay observation that the decedent was "barely talking doesn't tell [Dr. Revercomb] much" about consciousness or conscious pain and suffering. Id at 34.

   Plaintiff asserts that "[T]he tape also provides a recording of what Ms. Walters heard as she was dying in the street, thereby proving insight into what she experienced immediately prior to her death." Opp. at 3. This argument is without merit. The extent to which decedent may have heard, or was capable of hearing anything, is intricately connected to her state of consciousness and a matter of expert medical opinion. Dr. Revercomb will not offer an opinion on this issue. See Def.'s Exh. 4, and Carolyn H. Revercomb, M.D. Report, Def.'s Exh.

---

[1] Opp. at 2.

5.[2] This issue is beyond the ken of a lay person.

Plaintiff does not dispute the highly emotional demeanor of Ms. Ramsuer depicted on the tape. Moreover, while Plaintiff cites a number of cases in which the court allowed the admission of a 911 tape, all of these cases dealt with the issue of whether or not the tape met the legal prerequisites for admission under the excited utterance exception to the hearsay rule pursuant to Fed. R. Evid. 803 (2). None of the cases relied upon by Plaintiff address the actual issue before the court -- the balancing test the court must conduct under Fed. R. Evid. 403 to determine whether or not the tape should be excluded because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The tape is highly inflammatory, lacking in probative value, and, therefore unfairly prejudicial to the defendant. It will also me misleading to the jury by introducing unqualified lay opinion, without proper foundation.

Lastly, even if the tape is admitted into evidence, plaintiff does not address WMATA's argument that a transcript of the recording, with a time stamp of each statement would not suffice. Such a transcript would avoid the highly emotional

---

[2]When asked during her recent deposition whether or not she had any additional opinions, or additions, or supplements to her expert report she answered in the negative. 4/29/08 Dep. of Carolyn Revercomb, M.D. at 20, Def's exhibit 4.

nature of the tape, while preserving plaintiff's arguments concering admissibility to establish the time frame of any alleged conscious pain and suffering..

For the foregoing reasons, and those set forth in WMATA's motion, Plaintiff should be precluded from playing or introducing the 911 tape.

**Respectfully submitted,**

_____/s/_____
**Fredric H. Schuster, #385326
David J. Shaffer #413484
600 Fifth St., N.W.
Washington, D.C. 20001
(202)-962-2560
Counsel for Defendant  WMATA**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GLADYS CLAUDETTE SUTTON** : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Case No. 071197 (JDB) |
| : | |
| **WASHINGTON METROPOLITAN** : | |
| **AREA TRANSIT AUTHORITY** : | |
| : | |
| Defendant. : | |
| : | |

## ORDER

Upon the consent motion of Defendant WMATA for a one week extension to file its Rule 26(a)(2)(B) Expert Disclosures, it is this _____ day of January_____, 2008, ordered that the motion is Granted. WMATA shall file its Rule 26(a)(2)(B) Expert disclosures on or before February 4, 2008.

_____
John D. Bates, United
States District Court, D.C.

cc: Counsel of record

1

1   IN THE UNITED STATES DISTRICT COURT

2   FOR THE DISTRICT OF COLUMBIA

3   ---------------------------------     **ORIGINAL**

4   GLADYS CLAUDETTE SUTTON             |

5              Plaintiff                |

6   v.                                  | C.A. No. 07:1197

7   WASHINGTON METROPOLITAN AREA        | (JDB)

8   TRANSIT AUTHORITY                   |

9              Defendant                |

10  ---------------------------------

11

12         Deposition of CAROLYN REVERCOMB, M.D.

13                  Washington, D.C.

14              Tuesday, April 29, 2008

15                    10:07 a.m.

16

17  Job No.:  1-127409

18  Pages 1 - 69

19  Reported by:  Patricia G. Mitchell, RMR

20

21   
DEFENDANT'S EXHIBIT 4

22

L.A.D. REPORTING & DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, MD • McLean, VA

DEPOSITION OF CAROLYN REVERCOMB, M.D.
CONDUCTED ON TUESDAY, APRIL 29, 2008

20

1  Q   Did you meet with counsel prior to your
2  deposition today?
3  A   Yes.
4  Q   When was that?
5  A   Last week.
6  Q   In his office or here?
7  A   Here.
8  Q   To discuss what?
9  A   Preparation for deposition.
10 Q   What were you told?
11 A   The likelihood of what types of things would be
12 discussed.
13 Q   Other than your original draft report which
14 then became a final report on November 10th, have there
15 been any other additions, addendums, supplements,
16 amendments to that November 10th report?
17 A   No.
18 Q   The November 10th report stands as of now as
19 your final expert report?
20 A   Yes.
21 Q   Let's refer to the November 10th report if we
22 could.  Again, that's Dr. Revercomb Number 2.  You state

1  I'm trying to make.  Lay people, nonexperts make
2  observations all the time about things they believe they
3  see or they saw, and they relate that to meaning
4  something, whether it's an indicia of life or
5  consciousness.
6            I'm asking you if such an observation was made
7  that the decedent was breathing, to you as a forensic
8  pathologist, as a medical examiner, does that mean that
9  that person was conscious or feeling conscious pain and
10 suffering?
11      A    No.
12           MR. MALONEY:  Objection to form and substance,
13 but go ahead.
14      A    No.
15 BY MR. SCHUSTER:
16      Q    You state in your report:  She, Ms. Walters
17 became unconscious not on the initial impact with the bus
18 or ground but within minutes due to loss of blood
19 pressure resulting from bleeding from multiple injuries,
20 the most significant of which was aortic, liver and
21 spleen lacerations in the pelvic trauma.
22           How many minutes?

64

1   A   That's rough. Again, the factor that one uses
2   varies in the literature and among those who have done
3   this testing. But generally because of the water content
4   of the vitreous is going to be slightly higher than the
5   blood level at any given time as after equilibration.
6   Q   I guess what I was looking for is some
7   clarification because I thought you said it was .36 was
8   the level and it's actually .036 is the level?
9   A   It's not .36. It's not anywhere near that.
10  It's .036. If I said .36, that's not accurate. It needs
11  to be .036. It's less than .04. I may have mumbled.
12  Q   I may have written it down incorrectly, but I
13  just wanted the record to be clear, so thank you.
14      MR. MALONEY: Those are all the questions I
15  have. Thank you, Doctor.
16  FURTHER EXAMINATION BY COUNSEL FOR THE DEFENDANT
17  BY MR. SCHUSTER:
18  Q   Doctor, however you made that clarification,
19  Ms. Walters was under the influence of ethanol at the
20  time of her death, correct?
21  A   Yes.
22  Q   As to the 911 tape, you had reached your own

DEPOSITION OF CAROLYN REVERCOMB, M.D.
CONDUCTED ON TUESDAY, APRIL 29, 2008

65

1  independent conclusions without the benefit of that tape

2  already, hadn't you?

3       A    Yes.

4       Q    So you didn't rely upon that tape in reaching

5  the opinions you already reached before you even listened

6  to the tape?

7       A    No, I didn't.

8            MR. SCHUSTER:  Thank you.

9       FURTHER EXAMINATION BY COUNSEL FOR THE PLAINTIFF

10  BY MR. MALONEY:

11      Q    Last question.  But the 911 tape, again,

12  supports the opinions that you had arrived at in this

13  case; is that a fair characterization?

14      A    It doesn't contradict them.

15           MR. MALONEY:  Thank you.

16           (Signature having not been waived, the

17  deposition of CAROLYN REVERCOMB, M.D. was concluded at

18  11:46 a.m.)

19

20

21

22

Carolyn H. Revercomb, M.D., Deputy Medical Examiner
District of Columbia OCME
1910 Massachusetts Avenue SE
Washington, DC 20003

November 10, 2007

Paul J. Maloney, attorney at law
Carr Maloney PC
1615 L Street NW, Suite 500
Washington, DC 20036

    Re: Angel Walters(DOD 2-17-07; DC OCME # 07-384)

Dear Mr. Maloney:

I have reviewed the following related to the above referenced case: investigative, autopsy and toxicology reports generated by the DC OCME; a fixed specimen(uterus and adnexa) from the autopsy and two microscopic slides prepared from that specimen; autopsy photographs; a surveillance videotape from the scene showing the decedent and the bus on February 17, 2007; photographs of the bus and scene; and photographs of clothing.

It is my opinion to a reasonable degree of medical certainty that Ms. Walters was struck while upright. She was propelled to the ground by the initial impact with the bus from her left side, and was run over by at least one bus tire. She sustained a crushing injury to her lower torso including multiple pelvic fractures and a laceration through the uterine isthmus. She became unconscious not on the initial impact or impact with the ground but within minutes due to loss of blood pressure resulting from bleeding from multiple injuries, the most significant of which were aortic, liver and spleen lacerations and the pelvic trauma.

Ms. Walters was not pregnant at the time of her death.

Ms. Walters was under the influence of ethanol at the time of her death. She had been exposed to cannabinoids, most likely within days, but there is no evidence that she was under the influence of a psychoactive component of marijuana when she died.

Sincerely,

Carolyn H. Revercomb, M.D.

DEFENDANT'S EXHIBIT 5

The expert witnesses, not Ms. Ramsuer, will establish the "time line"[1] of any consciousness pain and suffering.  Dr. Adams does not rely upon the contents of the 911 tape in reaching, or as a basis of, his opinions.  Dr. Revercomb acknowledges that her expert opinions were reached independently of the information contained on the 911 tape and that she did not rely upon the tape in reaching her opinions. Revercomb Dep. at 64-65, Def. Exh. 4. "[M]y opinions I had prior to hearing the tape." Id. at 49. Dr. Revercomb further agrees that lay observations of indicia of life, such as Ramseur's observation of decedent's apparent breathing, is not an indication of consciousness, in the medical sense. Id. at 34, Def.'s Exhibit 4. Likewise, Ramseur's lay observation that the decedent was "barely talking doesn't tell [Dr. Revercomb] much" about consciousness or conscious pain and suffering. Id at 34.

Plaintiff asserts that "[T]he tape also provides a recording of what Ms. Walters heard as she was dying in the street, thereby proving insight into what she experienced immediately prior to her death." Opp. at 3. This argument is without merit.  The extent to which decedent may have heard, or was capable of hearing anything, is intricately connected to her state of consciousness and a matter of expert medical opinion.  Dr. Revercomb will not offer an opinion on this issue. See Def.'s Exh. 4, and Carolyn H. Revercomb, M.D. Report, Def.'s Exh.

---

[1]Opp. at 2.