### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **GLADYS CLAUDETTE SUTTON, Individually** | **:** | |
| **and as Personal Representative of the Estate** | **:** | |
| **and Next of Kin of ANGEL CLAUDETTE** | **:** | |
| **WALTER, Deceased** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | |
| | **:** | **Civil Action No.1:07CV01197** |
| | **:** | **Judge John Bates** |
| **v.** | **:** | **PTC:7/25/08 @ 9:00 a.m.** |
| | **:** | **Trial: 9/15/08** |
| | **:** | |
| **WASHINGTON METROPOLITAN AREA** | **:** | |
| **TRANSIT AUTHORITY (WMATA)** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

### DEFENDANT WMATA'S PRETRIAL STATEMENT

COME NOW Defendant WMATA, and pursuant to LCvR 16.5 (b), (March 2008) submits the following Pretrial Statement:

I. **STATEMENT OF THE CASE**:

    A.    **Brief Description of the Nature of the Case.**

This is a personal injury negligence action brought pursuant to the District of Columbia Wrongful Death and Survival Acts, D.C. Code §12-101 and D.C. Code §§ 16-2701, *et seq*. On Saturday, February 17, 2007, at approximately 11:09 p.m., a WMATA bus operated by Brenton L. Fairnot was traveling eastbound on the 1300 block of Congress Street, S.E., Washington, D.C., and struck and killed 21 year old Angel C. Walters.

**B. <u>Identity of the Parties</u>.**

Plaintiff is Gladys Claudette Sutton individually and as personal representative and next of kin of Angel Walter, Deceased. Defendant is the Washington Metropolitan Area Transit Authority (WMATA), a congressionally approved interstate compact among and between the District of Columbia, State of Maryland, and Commonwealth of Virginia. District of Columbia Code §9-1107.01, *et seq*.

**C. <u>Basis of Jurisdiction</u>.**

This court exercises jurisdiction over this matter pursuant to section §81 of the WMATA Compact, District of Columbia Code, §§ 9-1107.01(81) and 9-1107.10 (West, 2001).

**II.    <u>STATEMENT OF WMATA'S DEFENSES</u>:**

<u>Liability</u>

1. On the day of the accident, 21 year old Angel Walters, had normal sight and hearing. She had no physical disabilities.

2.  On the day of the accident, Decedent had spent the day shopping with her girlfriends and then five year old daughter Aubria Walters to purchase furnishings for her new apartment on the 1300 block of Congress Street, S.E. Before returning home late that evening to the new apartment, decedent and her girlfriends had eaten at a restaurant and had several alcoholic beverages.

3.    Upon returning home, the Cadillac Escalade in which decedent was a

rear seat driver's side passenger, exited the vehicle. The right rear of the Escalade was parked approximately 2.5 from the curb, therefore leaving the left rear driver's side of the vehicle extending further into the travel portion of the street, than usual. After exiting the vehicle decedent retrieved packages from the rear trunk of the vehicle.

    4.   According to Plaintiff, at slightly greater than 7.73 seconds before the impact, decedent started to walk towards the area of impact in the travel portion of the street and the bus was approximately 167 feet from the area of impact. At slightly greater than 6.67 seconds before the impact, decedent without difficulty, stepped onto the non-ice travel portion of the street,  and the bus was approximately 140 feet from the area of impact. At slightly greater than 5.33 seconds before impact with the bus, decedent stopped, and remained stationary in the travel portion of the street. "Ms Walters at impact, was located in the street approximately 2 to 3 feet from the left side of the Escalade when she was struck by the front of the bus." Plaintiff's expert David Plant's November 9, 2007 Expert Report at 6, 8.

    5.   While standing in the travel portion of the street, decedent was facing the direction of the oncoming bus to her left."Given the pattern of injuries, it is most likely that Ms. Walters was struck from the front."  Plaintiff's expert Laura A. Wojcik, Ph.D., P.E. November 5, 2007 Expert Report at 4. November 7, 2007 accident re-enactment photographs by Plaintiff's accident reconstruction expert

David Plant.

      6.     As decedent stood stationary in the street for greater than 5.33 seconds, she was fully able to fully observe the approaching 40 foot, well lit, diesel engine WMATA bus. Dec. 14, 2007 Plant Dep. at 47-48, 88. In fact, "Ms. Walters would have had a better opportunity to view the large illuminated bus than Mr. Fairnot had to observe a non-illuminated pedestrian and could have moved out of a position of danger." "There was sufficient lighting, time (7.7 seconds) and sight distance for Ms. Walters to observe and recognize she was placing herself in a travel lane in conflict with the path of an approaching commercial vehicle." Defendant's Expert Will Partenheimer and Stephen B. Chewing's Feb. 4, 2008 Expert Report, at 5- 6.

      7.     It is undisputed that decedent took no evasive action whatsoever to remove herself from the path of the oncoming bus, although nothing prevented her from doing so. Plaintiff's own expert Mr. Plant opines decedent would have had to step back only a "couple" or "several" feet to avoid being struck by the passing bus, and that she could move four to five feet in one second.  David Plant Dec. 17, 2007 Dep. at 87-90.

      8.     The posted speed limit on Congress Street, S.E. was 25 m.p.h. Plaintiff's expert David Plant places the speed of the bus at impact of 15 to 20 miles per hour consistent with that of Defendant's experts Will Partenheimer and Stephen Chewning.

9.     Decedent's post accident toxicology/drug testing conducted by the District of Columbia, Office of the Chief  Medical Examiner's Office was positive for alcohol (.03-.04%),  and the secondary metabolite of marijuana.  Plaintiff's expert, Deputy  Medical Examiner Carolyn H. Revercomb, M.D. has opined that "Ms. Walters was under the influence of ethanol at the time of her death." Revercomb Expert Report dated  Nov. 10, 2007 Report.

10.     It is undisputed that decedent was intending to cross Congress Street, S.E. to bring the items she had purchased that day to her new apartment located directly across the street from where she was crossing and was struck.

11.     Decedent was contributorily negligent as a matter of law. She could fully observe and hear the oncoming 40 foot, well lit, loud sounding diesel engine bus approaching her from her immediate left, and had the opportunity and means of removing herself from the bus path by simply moving out of its path. However, she failed to do so. 18 Code of D.C. Municipal Regulations, § 18-2304.2 states: "Each pedestrian crossing a roadway at any place other than within a marked cross-walk, or within an unmarked cross-walk at an intersection, **shall** yield the right-of-way to all vehicles on the roadway." (Emphasis added).   Decedent was not crossing in a marked cross-walk or within an unmarked cross-walk at an intersection.

12.     "The traffic laws of the District of Columbia and the decisions of this court impose on a pedestrian crossing a street in the middle of the block the duty of looking to avoid being hit." District of Columbia v. Robinson, (Robinson II), 644

5

A. 2d 1004, 1005, n.1 (D.C. 1994), citing Roberts v. Capital Transit Co., 131 F.2d 871, 872 (D.C. Cir. 1942).

13.    The "unexplained" violation of a traffic regulation enacted to prevent the type of accident that occurred constitutes negligence *per se.* Perkinson v. Gilbert/Robinson, Inc., 821 F.2d 686, 692 (D.C. *Cir. 1987); Lieken v. Wilson, 445 A.2d 993, 1001 (D.C. 1982).*

14.    A plaintiff whose claims would normally be completely barred by her own contributory negligence may rely upon the doctrine of "last clear chance, " and still recover, if she can prove each of the four distinct elements of that doctrine. The plaintiff has the burden of proof. Felton v. Wagner, 512 A.2d 291, 296 (D.C.1986), District of Columbia v. Huysman, 650 A.2d 1323, 1236 (D.C. 1994).

15.    The doctrine of last clear chance is not available to Plaintiff because WMATA's bus operator had no greater or superior subsequent opportunity to avoid the accident, than did decedent herself.  As the Court stated in District of Columbia v. Robinson (Robinson II), 644 A.2d 1004, 1005-06 (D.C. 1994):

> In another group of cases, the plaintiff's situation is not one of true helplessness, and he is still in a position to escape, but his negligence consists in failing to pay attention to his surroundings and discover his own peril.
>
> * * *
>
> [In such a case, if] the defendant does not discover the plaintiff's situation, but merely might do so by proper vigilance, it is obvious that neither party can be said to have a "last clear chance." The plaintiff is still in a position to escape, and his lack of attention continues up to the point of the accident, without the interval of superior opportunity which has been considered so important. The plaintiff may not reasonably demand of the defendant greater care for his own

6

protection than that which he exercises himself. Accordingly, the universal rule is that there can be no recovery.

16.    Additionally, at minimum, and without conceding Plaintiff can prove any of the elements of last clear chance, she cannot prove the second prong of last clear chance that "2) that the plaintiff [decedent] was oblivious of the danger or unable to extricate himself from the position of danger." Queen v. WMATA, 842 F.2d 476, 481 (D.C. Cir. 1988). Decedent was standing in the travel portion of the roadway for at least 5.33 seconds before impact. It is undisputed she could observe  the approaching 40 foot, well lit, diesel engine bus.  Moreover, decedent had ample opportunity to avoid being struck by the bus, or extricating herself from a position of danger during the more than 5.33 seconds she was standing in the travel portion of the street, by simply stepping out of the bus' path. Plaintiff's own expert opines she would have only had to move a couple of feet to avoid being struck by the bus, and that a person such as decedent could move 4-5 feet per second.

## DAMAGES

WMATA challenges plaintiff's claim that the Wrongful Death Act provides for the potential recovery of certain types of damages:

17.    **Consequential damages to decedent's child Aubria**.

Although plaintiff concedes that she is not seeking damages for "zone of danger" for the beneficiary of decedent' s estate, her six year old child, Aubria, plaintiff seeks to recover these damages through the "back door."  Plaintiff argues

7

that because Aubria allegedly suffers from Post Traumatic Stress Disorder (PTSD), she is entitled to lifetime damages for her emotional distress.  This argument has been briefed in Defendant's Motion *In Limine* to Exclude the Testimony of Dr. Kinlan.   Solatium (grief, loss of society, loss of companionship, mental anguish, sentimental loss) are not recoverable under the D.C. Wrongful Death Act.  D.C. Standard Jury Instruction 14.05[1].  This alleged harm is but another way of getting at solatium (grief, etc.)  and no mention of it should be permitted in front of the jury.

18.   **Consequential damages for a possible award of custody to Aubria's biological father.**

Plaintiff strays even farther from the permissible scope of damages under the Wrongful Death Act by claiming that there is a possibility that Aubria's presumably unfit biological father has sought custody of the child.  Damages for this are clearly speculative and are the subject of WMATA's Motion *In Limine* regarding striking the testimony of Dr. Kinlan.  The outcome of a court proceeding with full due process rights cannot be the subject of a damage award.  Even if it could, this Court cannot decide that issue.  No mention of this issue should be permitted in front of the jury.

19.   **Speculation about decedent's nursing career should not be permitted.**

Plaintiff seeks an award to her estate of damages for the possibility that she would become a registered nurse and receive a B.S. Degree in Nursing.  This is the subject of WMATA's pending Motion *In Limine* to Strike the Expert Testimony of Plaintiff's Experts Joseph H. Rose and Dr. Jerome Staller.

8

20.    **Damages for care, education, training, guidance and parental advice.**

Plaintiff seeks to use this <u>only</u> recoverable item of damages under the

Wrongful Death Act as a "back door" for the grief, loss of society and emotional

distress suffered by Aubria.  Plaintiff has proffered only the expert testimony of a

child psychiatrist who saw Aubria for six visits as the justification for allowing

expert testimony on this subject.  This should not be allowed for two reasons. First,

this is not within a <u>medical</u> expert's field of expertise.  If any expert is to be

permitted, it should be one who could testify on the value of, for example, a tutor,

nanny or similar care giver.  Plaintiff's expert economist, Dr. Jerome Staller has not

offered an expert opinion on this issue.  Second, if lay testimony is permitted as to

past care, education, training, guidance and parental advice, plaintiff's witnesses

should be instructed by plaintiff's counsel that they are **not** permitted to testify

concerning grief, affection, emotional distress or other items prohibited by the

Wrongful Death Act in the District of Columbia.  This is the subject of WMATA's

Motion *In Limine* Regarding Evidence of Care, Education, Training, Guidance and

Parental Advice filed on July 14, 2008.

21.    **Plaintiff's belated attempt to introduce expert testimony on decedent's future economic loss based upon the assumption she would have continued to work as a security guard under the guise of "rebuttal" expert testimony.**

Throughout the litigation, Plaintiff argued that decedent had recently enrolled

in the Nursing Program at UDC and would have obtained a two year, then a four

year, Bachelor of Science (BS) Degree in Nursing. Based upon this speculative

9

assumption, Plaintiff's expert witnesses, vocational rehabilitation specialist Joseph

H. Rose, and forensic economist, Jerome Staller, Ph.D., based their expert opinions

on that scenario, and not on the assumption decedent would continue to

work as a security guard. Plaintiff's expert reports were due on November 12,

2007. On April 15, 2008, under the guise of "rebuttal," Plaintiff suddenly changed

her trial strategy, and had the same experts prepare new reports based upon a new

assumption that decedent would have continued to work as a security guard. This

was apparently motivated by Plaintiff's knowledge of Defendant's intention to file

its Motion in Limine to Strike the Testimony of Mr. Rose and Dr. Staller based on the

speculative assumption that decedent would earn nursing degrees. These new

expert opinions should not be permitted because they were not true" rebuttal," but

merely a change in trial strategy to overcome the lack of an adequate factual

foundation to support Plaintiff's experts' original opinions. See WMATA's Motion to

Strike Joseph H. Rose and Dr. Jerome Staller at 2, n.3, and WMATA's Reply to

Plaintiff's Opposition at 6-7. "The principal objective of rebuttal is to permit a litigant

to counter new, unforseen facts brought out in the other side's case. Faigen v.

Kelly, 184 F.3d 67, 85 (1st Cir. 1999). "A change in trial strategy is not normally

permitted on rebuttal." Allen v. Prince Georges County, Md., 737 F.2d 1200, 1205

(4th Cir. 1984).

22.    **Decedent's 6 year old daughter Aubria should not be permitted to testify at trial.**

Plaintiff intends to call decedent's 6 year old daughter Aubria to testify at

trial solely for the purpose of generating jury sympathy for the loss of Aubria's

mother.  This will be unduly prejudicial to Defendant and should not be

permitted. Fed. R. Civ. P. 403. Any information regarding recoverable losses to

Aubria can be obtained through the testimony of a family member and/or

friend familiar with decedent and Aubria's interaction and relationship. See

WMATA's July 14, 2008 Motion *in Limine* Regarding Evidence of Care, Education,

Guidance, and Parental Advice.

**III.    SCHEDULE OF WITNESSES:**[1]

1.    Brenton Fairnot (Will be called)
Bus Operator
406 Aragona Drive
Ft. Washington, Maryland 20744

Mr. Fairnot will testify regarding the conditions on the evening of the accident

and how the accident occurred. His testimony will take approximately 45 minutes.

2.    Norman Williams (Will be called)
Bus Operations-Northern Division
4615 14th St., N.W.
Washington, D.C. 20011

Mr. Williams is a WMATA Street Supervisor and responded to the accident

scene.  He will testify regarding his observations of the conditions at the accident

scene, and his investigation.  His testimony will take approximately 30 minutes

3.    Walter E. Berry (May be called)
Bus Operations- Four Mile Run Division
3501 S. Glebe Road
Arlington, Va. 22202

---

[1]Each of these witnesses have been deposed.

Mr. Berry is a WMATA Street Supervisor and responded to the accident scene. He will testify regarding his observations of the conditions at the accident scene, and his investigation. His testimony will take approximately 30 minutes.

4.    Detective Wayne Washington (May be called).
D.C. Police
Major Crash Investigation Unit
6th Street and New York Avenue, N.W.
Washington, D.C. 20001

Detective Washington responded to the accident scene and conducted the official District of Columbia Police investigation of this fatality.  He will testify regarding his investigation. His testimony will take approximately 1 hour.

5.    Will Partenheimer or Steve B. Chewning (Will be called)*
1733 N. Parham Road, Suite 205
Richmond, Virginia 23229

Mr. Partenheimer and Mr. Chewning are accident reconstruction experts. Either Mr. Partenheimer or Mr. Chewning will testify in accordance with their expert report and depositions, including that decedent had a better opportunity to observe the bus then the operator had to observe decedent, and that decedent had the opportunity and time to avoid the accident by moving from the buses path, but failed to do so. Mr. Partenheimer's or Mr. Chewning's  testimony will take approximately 45 minutes.

6.    Kathleen F. Sampeck (Will Be Called):*
Capital Case Management
2174 Harpoon Drive
Stafford, Virginia 22554

12

Ms. Sampeck is an expert in vocational rehabilitation and counseling. She will testify that based upon decedent's academic past, work and earning history, experience and short time limited enrollment in UDC that it is far too speculative that she would obtain an RN, then BS Degrees in Nursing, and that it is more reasonable to assume she would have earned the income of a typical high school graduate, or possibly a certified nursing assistant, or LPN. Her testimony will take approximately 45 minutes.

> 7.  Thomas C. Borzilleri, Ph.D. (Will Be Called)*
>     Forensic Economist
>     6701 Democracy Blvd., Suite 300
>     Bethesda, Md. 20817

Mr. Borzilleri, a forensic economist, will testify in accordance with his expert report and deposition regarding the future economic losses to decedent's estate reduced to present day value based upon the assumptions of Ms. Sampeck. His testimony will take approximately 30 minutes.

> 8.  John E. Adams, M.D. (Will be called)*
>     827 West Padonia Road
>     Cockeysville, Maryland 21030

Dr. Adams is a forensic pathologist. He will testify in accordance with his expert report and deposition that decedent suffered a complete transection of her aorta and as a result, at most, suffered between 2-3 seconds of "conscious pain and suffering." His testimony will take approximately 30 minutes.

> 9.  Lee H. Haller, M.D. (Will be called).*
>     9800 Falls Road, Suite 2
>     Potomac, Maryland 20854

13

Dr. Haller is a board certified in Forensic Psychiatry, Child Adolescent Psychiatry, and General Psychiatry. He will testify in accordance with his expert report and deposition regarding the effect decedent's death had on her daughter Aubria, including that Aubria does not suffer from post-traumatic stress disorder (PTSD). His testimony will take approximately 1 hour.

10.    Quintenette L. Ramseur (May be called)
        3414 13th Place, S.E., Apt. 104
        Washington, D.C. 20032

Ms. Ramsuer, decedent's friend, was with her at the time of the accident and witnessed part of the accident. She will testify regarding her knowledge of the accident and circumstances. Her testimony will take approximately 15 minutes.

11.    Garnisha Valentine (May be called)
        3414 13th Place, S.E., Apt. 204
        Washington, D.C. 20032.

Ms. Valentine, decedent's friend, was with her at the time of the accident and witnessed part of the accident. She will testify regarding her knowledge of the accident and circumstances. Her testimony will take approximately 15 minutes.

12.    Latitia Kirkland (May be called)
        1354 Dexter Terrace, S.E.
        Washington, D.C. 20032.

Ms. Kirkland, decedent's friend, was with her at the time of the accident and witnessed part of the accident. She will testify regarding her knowledge of the accident and circumstances. Her testimony will take approximately 15

14

minutes.

    13.    George E. Filsinger, Jr. (May be called).
            Admiral Security Company
            13005 Bridger Drive
            Germantown, Md. 20784

Mr. Filsinger was decedent's supervisor at Admiral Security. He will testify

regarding decedent's employment status and that security was not decedent's

career choice.  His testimony will take approximately 15 minutes.

    14.    Dr. Connie M. Webster (Will be called)
            University of the District of Columbia
            4200 Connecticut Ave., N.W.
            Washington, D.C. 20008

Dr. Webster is the Director of the UDC School of Nursing. She will testify that

at the time of decedent's death she was enrolled only as a part-time night student

taking only remedial math and English courses, and that she was not taking any

college level courses. She will also testify that decedent had not even applied, much

less been accepted into the highly competitive nursing program at the time of her

death. Further she will testify that students are not automatically admitted to the

Nursing Program by simply indicating an interest or declaring nursing as a major  Her

testimony will take approximately 30 minutes.

    15.   Defendant may call any witness listed by the plaintiff, including

decedent's mother, Plaintiff Glady's Sutton.

    IV.    **LIST OF EXHIBITS: (except impeachment):**[2]

---

[2]All the exhibits listed have previously been provided in discovery.

*Expects to offer.  **May offer if need arises

1.     Any exhibit listed by Plaintiff.**

2.      February 17, 2007, Post-Accident Color Photographs of the Accident Scene, 1300 Block of Congress Street, S.E., Washington D.C. (May be enlarged for trial).*

3.     2/17/07 SSPI Congress Park Video Clips**

4.     11/7/07 Accident Exemplar Photographs by David Plant*

5.     12/14/07 Plant Dep. Exhibit 10, photograph 2/17/07 Accident Scene Cadillac Location*

6.     12/14/07 Plant Dep. Exhibit 19 Split Screen Video Summary*

7.     Spitz & Fisher's "Medicolegal Investigation of Death," 4th edition, Charles C. Thomas Publisher, LTD., p.518.*

8.     Angel Walters High School Transcript, Calvin Coolidge High School, Spring of 2003*

9.     Dec. 5, 2006 UDC Admission Letter.**

10.    UDC First Semester Schedule For Entering Freshman Students Seeking A Degree, Group 1: 3 DE Courses**

11.     Angel Walters UDC Transcript**

12.     UDC Placement Test Results **

13.     Schuster/Connie Webster 12/1/07 e-mail**

14.     UDC Dept. of Nursing & Allied Health Website Nursing Program Description & Curriculum*

15.     2005 Angel Walters Tax Returns**

16      Angel Walters 2006 W-2 Statements *

18.     VMT Home Health Agency Employment File**

16

19.      Brighton Gardens at Friendship Heights Employment File.**

20.      GIANT Employment File**

21.      Sunrise Senior Living Services Employment File*

22.      Admiral Security Employment File**

23.      Transcript of 911 Communications Tape** Dependent upon
         Court's ruling on WMATA's pending motion *in limine*.

24.      Redacted Plaintiff's Expert Report of Laura A. Wojcik, Ph.D.
25.          Redacted Plaintiff's Expert Report of Carolyn H.
             Revercomb, M.D.

24.      Any deposition exhibit of any person deposed.**

25.      Any document from any of Plaintiff's experts' files**

WMATA does not object to the <u>authenticity</u> of plaintiff's exhibits,

<u>however</u>, specifically reserves the right to object to the admissibility of any exhibit on

any available grounds, such as lack of a proper evidentiary foundation, including the

necessity of expert testimony, hearsay, relevancy, etc. By authenticity it is meant

that the exhibit is a true and accurate copy of the original only.

## V.   <u>DESIGNATION OF DEPOSITIONS INTENDED TO BE OFFERED IN EVIDENCE BY WMATA</u>

None, except for impeachment in accordance with the Federal Rules of Civil

Procedure. WMATA also reserves the right to read the deposition of any person

under Fed. R. Civ. P. 32 in the event that person is "unavailable" for trial.

## VI.   <u>REQUEST FOR OTHER RELIEF</u>:

That the Court establish a date for which the parties must submit

proposed *voir dire* questions, proposed jury instructions, proposed verdict form, and

if requested, special interrogatories.

That the court rule upon Defendant's four (4) pending motions *in limine,* and WMATA's Motion for Summary Judgment  once the opposition and reply to that motion have been filed.

**Respectfully submitted,**

**WASHINGTON METROPOLITAN AREA
   TRANSIT AUTHORITY**

_____/s/_____
**Fredric H. Schuster #385326
Associate General Counsel**

_____/s/_____
**David A. Shaffer, #418434
Assistant General Counsel**

**Washington Metropolitan Area
Transit Authority
600 Fifth Street, N.W.
Washington, D.C. 20001
202-962-2560**

**<u>Certificate of Service</u>**

I hereby certify that a copy of WMATA's Pretrial Statement was electronically served on counsel for plaintiff on July 14, 2008.

_____/s/_____
Fredric H. Schuster