UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| GLADY SUTTON, As Mother and Next Kin of Deceased Daughter, ANGEL WALTERS, | : : : : |
| Plaintiff, | : : |
| v. | : Case No.: 1:07cv1197 (JDB) |
| WASHINGTON METROPOLITAN AREA TRANSPORTATION AUTHORITY, | : : : |
| Defendant. | : |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE REGARDING PLAINTIFF'S CLAIM OF LOSS OF CARE, EDUCATION, TRAINING, GUIDANCE AND PARENTAL ADVICE**

Plaintiff opposes Defendant Washington Metropolitan Area Transportation Authority's ("WMATA") attempt to silence the trial testimony of Aubria Walters regarding her claim of loss of care, education, training, guidance and parental advice. Aubria is the only daughter of Angel Walters, a single mother, who was struck and killed by a WMATA bus driver on February 17, 2007. Cases involving the District of Columbia's wrongful death statute have readily allowed testimony from the children of deceased family members as evidence to support a claim of loss of care, education, training, guidance and parental advice. *See, Doe v. Binker*, 492 A.2d 857, 863 (D.C. 1985).

WMATA's assertion that the number of witnesses allowed to testify on behalf of the daughter's loss be limited to one witness, Gladys Sutton, is unsupported by law and must be denied. Case law affirms that a jury is entitled to review and digest competent evidence from a variety of sources to appropriately evaluate loss of care. *See, Elliott v. James*, 559 F.2d 759 (1977), *Rankin v. Shayne Bros., Inc.*, 234 F.2d 35, 36 (1956).

## I. IN WRONGFUL DEATH CASES, THE JURY DETERMINES THE VALUE OF LOSS OF CARE, EDUCATION, TRAINING, GUIDANCE AND PARENTAL ADVICE

The District of Columbia's Wrongful Death Act is "designed to provide a remedy whereby close relatives of the deceased who might have expected maintenance or assistance from the deceased had [s]he lived, may recover compensation from the wrongdoer commensurate with the loss sustained." *District of Columbia v. Hawkins,* 782 A.2d 293, 303 (D.C. 2001) (quoting *Semler v. Psychiatric Inst. of Washington, D.C.,* 575 F.2d 922, 924-25 (1978)). As the Standardized Civil Jury Instructions for the District of Columbia for Wrongful Death Act Damages states, "[the jury] should also set a dollar amount on the reasonable value of any services that the deceased would have provided to each beneficiary over their joint life expectancies." Standardized Civil Jury Instruction §14.05. As to the damages to award when the deceased is a parent of a minor next of kin beneficiary, the jury is instructed in making its award to "consider the loss of care, education, training, guidance and parental advice that [the deceased parent] would have been expected to give to [the decedent's next of kin beneficiaries]." *Id.*, Optional Paragraph 2.

Recoverable damages under this the Wrongful Death Act include: (1) pecuniary losses resulting from the loss of financial support the decedent could have been expected to provide the next of kin had [s]he lived; **and** (2) the *value* of lost services (e.g., care, education, training, and personal advice). *Id.* (emphasis added). Therefore, two main elements form the basis for recovery under the Wrongful Death Act: the first element compensates for pecuniary loss, while the second element compensates for the *value* of services lost to the family as result of the decedent's death. *Id.*

Defendant WMATA argues that under the Wrongful Death Act, "only evidence which is relevant to pecuniary damages is admissible." Defendant's Motion at 3. Notably missing in this assertion is the legal authority from which this statement is derived. As noted previously, in a wrongful death action, the value of lost services is a separate recoverable damage from the pecuniary losses that can be claimed. District of Columbia courts have held that, "even though some of our opinions have spoken of Wrongful Death Act damages as representing 'pecuniary' loss to the beneficiary, we are quite aware that a dollar 'amount cannot be computed by any mathematical formula.'" *Elliott v. James*, 559 F.2d 759 (1977) (quoting *Rankin v. Shayne Bros., Inc.*, 234 F.2d 35, 36 (1956)). Naturally, such determination must be left to the sound judgment of the jury, since the amount of damages is not subject to mathematical calculation. *Id.* This is true in most tort cases. *Id.*

In *Elliott v. James*, 559 F.2d 759 (1977), a case also cited by Defendant, following the stabbing death of her daughter in the defendant's restaurant, the victim's mother filed a wrongful death and a survival action against the defendant. As to the wrongful death claim, the trial judge stated that there was no testimony of the present value of the daughter's services to her mother. *Id.* at 765. The trial judge concluded that the damages for the wrongful death claim were "entirely speculative," and did not allow the wrongful death claim to go to the jury. The Plaintiff appealed. *Id.* at 765-66. The Court of Appeals ruled that the trial judge erred in taking Plaintiff's wrongful death claim from the jury. The Court noted that the trial judge's "view that definite dollar values be established with reference to the factors entering into a verdict went beyond the requirements of the proof upon which the good sense and sound judgment of the jury were required to operate." *Id.* at 767.

In the wrongful death case at bar, Defendant seems to suggest that definite dollar values must be provided for the jury to consider damages for loss of care, education, training, guidance and parental advice; but as noted in *Elliott*, this reasoning goes beyond the requirements of the proof needed for the jury to calculate the value of lost services in a wrongful death claim. In quantifying the "amount" for the loss of each of the services performed by the decedent, District of Columbia Courts have stated that the "the loss of these services cannot be quantified with mathematical precision," and that it must be based on the sound judgment of the jury. *Doe*, 492 A.2d at 863-64 (quoting *Rankin v. Shayne Brothers, Inc.*, 98 U.S.App.D.C. 214, 215-16 (1956)).

As articulated by the court in *Wentling v. Medical Anesthesia Services, P.A.*, 701 P.2d 939, 944 (Kan. 1985), for loss of services, care, and guidance, a plaintiff is deemed to have satisfied his burden of proof by showing the nature and extent of his losses, and triers of fact are presumed to be capable of converting losses into monetary equivalents on the basis of their own experience and knowledge. "The fact that such matters as loss of care, training, advice, guidance and education are not readily reduced to a present money value does not mean that those factors need not be taken into consideration." *Id.* A jury is not precluded from considering the testimony of such losses and arriving at its verdict, even though a specific monetary figure of the value of those losses has not been presented. *Id.* at 948. The plaintiff has the burden to show the nature and extent of these losses, and the jury is "presumed to be capable of converting the losses into monetary equivalents on the basis of their own experience." *Id.*; *see also, Griffith v. Mt. Carmel Medical Center*, 842 F.Supp. 1359, 1370 (D.Kan. 1994).

4

## II. DECEDENT'S DAUGHTER HAS PROVIDED COMPETENT TESTIMONY THROUGHOUT DISCOVERY AND WMATA'S REQUEST TO EXCLUDE HER FROM TESTIFYING SHOULD BE DENIED

As part of discovery in this case, Aubria has submitted to almost an hour long deposition and was subjected to hours of videotaped psychological evaluations by WMATA's expert. Throughout her deposition and her sessions with WMATA's expert, Aubria has demonstrated that she has the intellectual capacity to understand and answer questions asked of her. Obviously, counsel for both sides must exercise care when questioning a witness of a young age, but that does not mean that her testimony is not reliable or that she does not have information relevant to aid the jury in determining the value of lost services.

Aubria is an essential witness as to the loss of the services that her mother provided to her. She should not be deprived the opportunity to tell the jury about what her mother is no longer here to do for her, especially when she has demonstrated her ability to provide such details. At her deposition, Aubria described many of the activities her mother did with her, including taking her to the library, reading to her, going to church, and going to the playground. *See*, Deposition of Aubria Walters, April 18, 2008, attached as Exhibit A, p. 18, lns. 5-11; p. 18, ln. 22 through p. 19, ln. 10; and p. 22, lns. 7-16.

Defendant provides no legal authority that suggests that a child is not able to testify as to the loss of services provided by her mother. In *Doe v. Binker*, 492 A.2d 857 (D.C. 1985), a 37 year old father and husband was killed in an automobile collision. The evidence presented at trial as to the loss of care, education, training, guidance and parental advice was provided through the testimony of the decedent's wife and two daughters. Their testimony showed that decedent, "among other things, took care of the children on his days off, prepared meals for his family, took the children to

5

the doctor and sporting events, performed home repairs, grocery shopping and other activities." *Id.* at 863. Like the daughters in *Doe*, Aubria should not be denied an opportunity to share her testimony of the services her mother performed for her.

This leading case of *Doe v. Binker* not only shows that the Court allows the testimony of the child of the deceased to establish evidence of the loss of care, education, training, guidance and parental advice, but it also demonstrates that there is no limit provided as to the number of witnesses allowed to testify on the loss of care. In fact, for the jury to fully ascertain and appreciate the loss of care, education, training, guidance and parental advice, it would be unjust to limit testimony on these aspects of loss to the testimony of only one person.

WMATA argues that due to Aubria's age, she would not be able to testify appropriately. The Courts in the District of Columbia, however, do not assume that a child is incompetent to testify solely because of her "young age" as WMATA asserts. The Courts have long acknowledged that "there is no precise age which determines the question of a witness' competency, and the competency of a child depends upon [her] intelligence and capacity, and [her] appreciation of the difference between truth and falsehood, as well as of the duty to tell the former." *In re Lewis*, 88 A.2d 582 (D.C.App. 1952). Aubria is capable of differentiating between a truth an a lie, as demonstrated by her deposition testimony.[1] A child is considered competent to testify if she is

---

[1] Q: Tell me what you understand it means to tell the truth?
A: The truth is when you – if you don't tell the right thing, you can get in trouble.
Q: That's a good start. If I were to tell you that the sky is red, would that be a truth or a lie?
A: A lie.
Q: And if I was to say the sky is blue, what would that be?
A: True.
Q: Okay. And you understand that one of the things that you have to do today is tell the truth? Do you understand that?   A: Yes. *See*, Exhibit A, p. 7, ln. 21 though p. 8, ln. 12.

able to recall events about which she is to testify, understands difference between truth and falsehood, and appreciates the duty to tell the truth. *Howard v. U.S.*, 663 A.2d 524 (D.C. 1995). Aubria has demonstrated through her repeated interviews that she is able to clearly recall the matters related to this case truthfully and thoroughly.

Courts in other jurisdictions have also allowed the testimony of minors in wrongful death actions. In *West v. Sinclair Refining Co.*, 90 F.Supp. 307 (D.Mo. 1950), the Court held that the 6-year-old daughter of the deceased was competent to testify in a wrongful death action. In *Hildreth v. Key*, 341 S.W.2d 601 (Mo.App. 1960), another wrongful death action, even though the accident had occurred when the child was 4-years-old, the court found no abuse of discretion in the trial court's determination that a 9-year-old witness was competent to testify.

In *Bradburn v. Peacock*, 135 Cal.App.2d 161 (1955), the appellate court held that the trial court abused its discretion in *failing to examine* a 5-year-old witness and ruling him incompetent to testify to what he saw when the defendant's truck allegedly ran over his little sister. The facts showed that the boy was 3-years-old at the time of the accident, and was 5-years-old at the time of trial. The Court stated that the child's "extreme youthfulness" was not, *per se*, sufficient to exclude him from the witness stand. In the instant case, although WMATA asserts that Aubria should not be allowed to testify because of her "young age," *Lewis, Bradburn* and numerous rulings from courts across the country, make clear that a child's age alone is not sufficient to exclude the child from testifying. *See, West v. Sinclair Refining Co.*, 90 F.Supp. 307 (D.C.Mo. 1950) (holding that 6-year-old daughter of deceased was competent to testify in wrongful death action); *Hall v. State* 196 Ga.App. 523 (1990) (ruling that trial court did not abuse its discretion by admitting testimony of 6-year-old victim where she indicated that she understood difference

between telling truth and telling lie); *Cheeseman v. Cheeseman*, 99 Cal.App. 290 (1929) (recognizing that 6-year-old child was competent to testify where the child was found to be sufficiently intelligent to give competent testimony in the proceedings modifying the father's visitation rights of his infant daughter); *Victor v. Smilanich*, 54 Colo. 479 (1913) (finding six year old competent to testify in personal injury action); *State v Anderson*, 16 Ohio App.3d 251 (1984) (affirming trial judge's ruling that permitted testimony from a 6-year-old child).

### III. WMATA'S REQUEST TO LIMIT TESTIMONY TO ONE PERSON SHOULD BE DENIED

Defendant seeks to have Gladys Sutton, the victim's mother, and Aubria's grandmother, designated as the only person allowed to testify as to the loss of services suffered by Aubria. Limiting the plaintiff's evidence as to the loss of services suffered by Aubria to just one witness would unfairly restrict plaintiff's opportunity to present evidence regarding damages. Although Ms. Sutton may be able to testify as to *some* of the losses of care, education, training, guidance and parental advice experienced by Aubria, that in no way should preclude all other testimony that could be provided by other relevant witnesses, including Aubria herself, Aubria's teachers, other family members, and friends of Angel Walters, who personally witnessed the services provided by Aubria's mother. Furthermore, contrary to WMATA's assertions, Gladys Sutton did not live with Angel and Aubria throughout their lives together. Ms. Sutton was not present for all aspects of Angel and Aubria's life together. Other witnesses are necessary to testify as to some of the services of which Ms. Sutton does not have personal knowledge, *i.e.* Angel's involvement in Aubria's education, which is best provided by Aubria's teachers. The jury should hear from Aubria, Ms. Sutton, and any other witness who can attest to these losses and compensate Aubria for each of these elements individually.

In *Choctaw Maid Farms, Inc. v. Hailey*, 822 So.2d 911 (Miss. 2002), the Court determined that the testimony of five witnesses regarding a decedent's loss of enjoyment of life and loss of society was not excessive in wrongful death action. Additionally, in *Hunt v. Harrison*, 707 N.E.2d 232, (Ill.App.1.Dist.,1999), the Court concluded that the trial court *abused its discretion* when it ruled that a minister would not be allowed to testify in the wrongful death action regarding the decedent's relationship with his five children. In that case, two of the decedent's five children were to be called as witnesses, and the minister, as the only independent witness, could have offered a different perspective. In the instant case, there are many different perspectives that must be presented to the trier of fact to determine the value of the loss of services. Limiting the number of witnesses who may testify to just one witness would be a gross injustice to a child who has already suffered the injustice of having her mother taken from her.

### III.  MENTAL ANGUISH IS NOT A PART OF PLAINTIFF'S WRONGFUL DEATH CLAIM

Plaintiff agrees that Aubria is not entitled to recover for mental anguish and grief pursuant to the D.C. Wrongful Death Act. D.C. Code §16-2701. As a beneficiary under the act, however, she is entitled to recover for the loss of care, education, training, guidance and personal advice she received from her mother. Defendant states that the jury must be able to consider clear, unemotional evidence. Defendant's Motion at 2. This is a wrongful death action of a single parent stuck and killed by a Metrobus. The nature of this case is far from unemotional.

Angel Walters made significant contributions to Aubria's life and provided her with care, guidance, and personal advice on a daily basis. She was a constant presence in her daughter's life and was the source of personal and moral support and guidance. There are many facets to the services that Angel provided Aubria, and plaintiff must present multiple witnesses to be able to

9

show all of the services that Aubria has lost due to her mother's death. Aubria should not be denied the opportunity, through her own testimony, her teachers' testimony, and the testimony of her family and friends, to show the jury the services her mother provided her that she will now be without for the rest of her life.

Respectfully submitted,

By:  /s/ Kelly M. Lippincott
Paul J. Maloney, Esquire
D.C. Bar No. 362533
Kelly M. Lippincott, Esquire
D.C. Bar No. 484610
CARR MALONEY P.C.
1615 L Street, N.W., Suite 500
Washington, D.C. 20036
(202) 310-5500 (telephone)
(202) 310-5555 (facsimile)
pjm@carrmaloney.com
kml@carrmaloney.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing **Plaintiff's Opposition to Defendant's Motion *in Limine* Regarding Plaintiff's Claim of Loss of Care, Education, Training, Guidance and Parental Advice** was e-filed and served electronically this 28th day of July, 2008, to:

> Fredric H. Schuster, Esq.
> David J. Shaffer, Esq.
> Assistant General Counsel
> Washington Metropolitan Area
>  Transit Authority
> 600 Fifth Street, N.W.
> Washington, D.C. 20001

> /s/ Kelly M. Lippincott
> Kelly M. Lippincott
> D.C. Bar No. 484610
> CARR MALONEY P.C.
> 1615 L Street, N.W., Suite 500
> Washington, D.C.  20036
> (202) 310-5500 (telephone)
> (202) 310-5555 (facsimile)
> kml@carrmaloney.com
> *Attorneys for Plaintiff*

Page 1

1         UNITED STATES DISTRICT COURT

2         FOR THE DISTRICT OF COLUMBIA

3

4   GLADYS CLAUDETTE SUTTON,        *

5     Individually and as           *

6   personal Representative of      *   Civil Action

7   the Estate and Next of Kin      *   No.:   07-01197 (JDB)

8      of ANGEL CLAUDETTE           *

9       WALTERS, Deceased           *

10             Plaintiff,           *

11               vs.                *

12   WASHINGTON METROPOLITAN        *

13    AREA TRANSIT AUTHORITY,       *

14             Defendant.           *

15         Oral Deposition of AUBRIA WALTERS

16                Washington, D.C.

17              Friday, April 18, 2008

18                   5:09 p.m.

19

20   Job No.:   1-127283

21   Pages 1 - 38

22   Reported by:   Danielle Krautkramer

PLAINTIFF'S EXHIBIT A

DEPOSITION OF AUBRIA WALTERS
CONDUCTED ON FRIDAY, APRIL 18, 2008

Page 7

```
 1       Q.      What do you like to play?
 2       A.      Games.
 3       Q.      What kind of games?
 4       A.      Hide and go seek.
 5       Q.      Do you like to play tag?
 6       A.      (Witness nodding.)
 7       Q.      Yeah?
 8       A.      Yes.
 9       Q.      Who do you play games with?
10       A.      My friends.
11       Q.      Do you play them also with your nieces and
12   nephews?
13       A.      (Witness nodding.)
14       Q.      Is that a yes?
15       A.      Yes.
16       Q.      Now, do you understand the difference
17   between the truth and a lie?
18       A.      (Witness nodding.)
19       Q.      Is that a yes?
20       A.      Yes.
21       Q.      Tell me what you understand it means to
22   tell the truth?
```

DEPOSITION OF AUBRIA WALTERS
CONDUCTED ON FRIDAY, APRIL 18, 2008

Page 8

1    A.    The truth is when you -- if you don't tell
2 the right thing, you can get in trouble.
3    Q.    That's a good start.  If I were to tell you
4 that the sky is red, would that be a truth or a lie?
5    A.    A lie.
6    Q.    And if I was to say the sky is blue, what
7 would that be?
8    A.    True.
9    Q.    Okay.  And you understand that one of the
10 things that you have to do today is tell the truth?
11 Do you understand that?
12    A.    Yes.
13    Q.    Okay.  Now, tell me a little bit about what
14 you like to do in school.
15    A.    Play math.
16    Q.    Oh, you like math?  You like to add
17 numbers?
18    A.    (Witness nodding.)
19    Q.    That's a yes?
20    A.    Yes.
21    Q.    And what don't you like about school?  Is
22 there anything you don't like about school?

Page 18

```
 1      Q.    How often would you go to the zoo with her?
 2      A.    One.
 3      Q.    Once?
 4      A.    Yes.
 5      Q.    What other types of things did you do with
 6   her other than going to the zoo and shopping?
 7      A.    Go to the playground.
 8      Q.    Went to the playground.  What did you like
 9   to play on on the playground?
10      A.    On the swings and the sliding board and the
11   monkey bars.
12      Q.    Are you good on the monkey bars?
13      A.    Yes.
14      Q.    Do you like to dance?
15      A.    Yes.
16      Q.    Are you good at dancing?
17      A.    Yes.
18      Q.    Do you ever take dancing classes?
19      A.    No.  We're going to.
20      Q.    You are going to?
21      A.    Uh-huh.
22      Q.    That's good.  Tell me about what other
```

1    places you would go with your mommy that died.
2         A.   The library.
3         Q.   Did you get out books?
4         A.   Yes.
5         Q.   Did she read books to you?
6         A.   No.
7         Q.   Did you read them for yourself?
8         A.   Yes.
9         Q.   Before you could read, did she read to you?
10        A.   Uh-huh.
11        Q.   And what kind of books do you like?  Do you
12   like Dr. Seuss?
13        A.   Yes.
14        Q.   Green Eggs and Ham?
15        A.   Uh-huh.
16        Q.   Is that one of your favorite ones?
17        A.   Uh-huh.  And the Cat In The Hat.
18        Q.   The Cat In The Hat, you like that one?
19        A.   Uh-huh.
20        Q.   How often would you go to the library with
21   your mommy?
22        A.   100.

DEPOSITION OF AUBRIA WALTERS
CONDUCTED ON FRIDAY, APRIL 18, 2008

Page 22

```
1    Q.    Okay.  Do you want to take a break?
2    A.    (Witness nodding.)
3    Q.    You want to keep talking?
4    A.    (Witness nodding.)
5    Q.    Yes?
6    A.    Yes.
7    Q.    Okay.  Tell me a little bit more about the
8  things you would do with your mommy.  We talked about
9  shopping, we talked about the playground, we talked
10 about the library, we talked about the zoo.  Can you
11 remember any other things?
12   A.    Church.
13   Q.    Go to church?
14   A.    Uh-huh.
15   Q.    Did you go to church every Sunday?
16   A.    Yes.
17   Q.    What do you like best about church?
18   A.    Singing.
19   Q.    Singing?
20   A.    Uh-huh.
21   Q.    Did you ever sing in a children's choir?
22   A.    Yes.
```

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GLADY SUTTON, As Mother and :
Next Kin of Deceased Daughter, :
ANGEL WALTERS, :
 :
      Plaintiff, :
 :
v. : Case No.: 1:07cv1197 (JDB)
 :
WASHINGTON METROPOLITAN AREA :
TRANSPORTATION AUTHORITY, :
 :
      Defendant. :

**O R D E R**

UPON CONSIDERATION of Defendant's Motion *in Limine* Regarding Plaintiff's Claim of Loss of Care, Education, Training, Guidance and Parental Advice, and Plaintiff's Opposition thereto, it is by this Honorable Court on this ___ day of _____, 2008

ORDERED, that Defendant's Motion is hereby DENIED.

                                                   _____
                                                   Judge John D. Bates

cc:   Paul J. Maloney, Esquire
      Kelly M. Lippincott, Esquire
      Carr Maloney P.C.
      1615 L Street, N.W., Suite 500
      Washington, D.C. 20036

      Frederic H. Schuster, Esquire
      David J. Shaffer, Esquire
      Associate General Counsel
      600 Fifth Street, N.W.
      Washington, D.C. 20001