**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                          :
**GLADYS CLAUDETTE SUTTON,**                              :
**Personal Representative of the Estate of**              :
**Angel Walters,**                                        :
                                                          :
              **Plaintiff,**                              :
                                                          :
       **v.**                                             :        **Case No. 07–1197 (JDB)**
                                                          :
**WASHINGTON METROPOLITAN**                               :
**AREA TRANSIT AUTHORITY,**                               :
                                                          :
              **Defendant.**                              :
_____                    :


**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION**
**TO DEFENDANT WMATA'S MOTION FOR SUMMARY JUDGMENT**

A.    Plaintiff Failed to Comply With Local Rule 7(h) By Controverting
      Defendant's Statement of Material Facts Not in Dispute.

       Contrary to the requirements of Local Civ. R. 7(h), plaintiff has failed to respond

to several of Defendant WMATA's Statement of Material Facts Not in Dispute.  A

careful review of Plaintiff's Statement of Material Facts in Dispute reveals that several

statements consist largely of facts that are immaterial and fail to controvert the key

material facts for purposes of the motion for summary judgment.  Defendant WMATA's

motion is not about the sufficiency of the evidence related to the primary negligence of

the bus operator, Brenton Fairnot.  The motion raises two issues: whether Angel

Walters was  contributorily negligent as a matter of law, and whether the doctrine of

Last Clear Chance is applicable to this case.

       Because plaintiff has failed to analyze WMATA's Statement of Material Facts,

WMATA must do so for this Court's convenience. That analysis demonstrates that the following <u>material</u> facts are not in dispute (the numbering is the same as in WMATA's original Motion):

3.      Upon arrival at the 1300 block of Congress Street, S.E., where decedent lived, she exited the left rear, driver's side passenger door of the Cadillac Escalade in which she was a passenger. The driver of the Escalade parked the vehicle in such a manner that the right rear of the Escalade was 2.5 feet from the right side curb. 12/14/07 Plant Dep. at 52-65 This resulted in the left rear driver's side of the car being closer to the travel lane of the street than it would normally be had the vehicle been parked closer to the curb.

4.      Prior to the collision, decedent was a pedestrian standing in the travel lane of eastbound Congress Street, S.E., for approximately 5.33 seconds. She was standing 2-3 feet away from the left rear side of the Escalade, within the eastbound traffic portion of roadway. She was not in a crosswalk. Her new apartment was directly across the street and she was intending to cross the street to go to her new apartment. David Plant Nov. 9, 2007 Report at 5, Dec. 14, 2007 Plant Dep. at 57-58, 79.

5.      Decedent had no problems with her hearing or sight, and was not disabled. Dec. 17, 2007 David Plant Dep. at 58, Nov. 13, 2007 Gladys Sutton Dep. at 33.

6.      WMATA's bus was 40 feet long, well lit, and had a diesel engine. Diesel engines are louder than normal automobile engines. Nov. 15, 2007 Garnisha Valentine Dep. at 127, Nov. 14, 2007 Dep. of Latilia Kirkland at 78-80, David Plant Dec. 14, 2007 Dep.

7.      Decedent was able to observe the bus approaching from her left as she stood in the roadway. 12/14/07 David Plant Dep. at 48, 88-90. "Ms. Walters could have seen the bus. Certainly." Will Partenheimer Mar. 7, 2008 Dep. at 72-73.

8.      During the 5.33 seconds decedent was standing in the travel lane of Congress Street, S.E. before being struck by the bus, she took no evasive action to remove herself from the path of the bus by stepping backward to a location to the side or rear of the Escalade. There was no impediment in stepping backwards. Dec. 14, 2008 Will Partenheimer/Stephen B. Chewning Report at 8.

9.      In order to avoid being struck by the bus, decedent had to move "a couple

of feet". She could have moved 4-5 feet within one second and could have stepped out of the travel portion of the roadway. Dec. 14, 2007 David Plant Dep. at 89.

10,    Decedent was facing the direction of the bus at the time of the collision. Wojcik Nov. 5, 2007 Report at 3. David Plant Nov. 7, 2007 Accident Re-Enactment photographs, Exh. [10], photos [A and B] showing exemplar decedent facing oncoming bus.[1]

12.    At the time of accident, decedent who was African-American, was wearing a black coat, gray tee shirt, blue jeans, bluish gray sneakers, multi-pastel color scarf and lavender winter wool knit cap. The Escalade she was standing adjacent to in the roadway was black. There was white snow on the ground. The shopping bags decedent had were also white. Plaintiff's autopsy photographs of decedent's clothing post-accident scene photographs.

Plaintiff offers "disputed" facts in paragraphs 7, 8, 9, 10, 12, 13, 14, 16, 20, 21, 22 , 23,  24, 25, and 27.  Each of these "disputed" facts relates only to the immaterial question of WMATA's alleged primary negligence.  These facts are not material to the issues raised by WMATA's motion and need not be discussed here.  The only "fact" merits some discussion is plaintiff's Statement No. 19, which reads: "The Escalade was between Ms. Walters and the curb at the time of impact, and approximately 1.5 feet away from Ms. Walters.  If she were to have backed up, she would have backed into the left rear corner of the Escalade." (Deposition of Will Partenheimer at 49) (Exhibit 7). This "fact" is contrary to the testimony of plaintiff's own expert, David Plant, who testified that Ms. Walters was standing 2 to 3 feet from the left side of the Escalade.  It is also contrary to the photographs of the post-accident scene and accident reconstruction, which purport to show the precise position of Angel Walters facing and

---

[1]    In defendant's Statement of Material Facts Not in Dispute, WMATA erroneously described the deposition exhibits as Exhibit 9, photos 4 and 5, rather than Exhibit 10, photos A and B.

watching the oncoming bus.  <u>See</u> Exhibits 10-A, 10-B to Defendant's Motion for Summary Judgment; David Plant Dep, at  48-49.  There is no evidence that plaintiff could not easily  have stepped back around the rear corner of the Escalade to a position of safety in that location.  These actions are required of a reasonably prudent person to remove her from a position of peril.

Plaintiff tentatively posits that in order to step back, she would have been forced to step on the packed snow and ice – the same snow and ice that she walked on to get into her position of peril.  As the accident scene photographs show, however, this snow and ice was far from an obstacle for her to overcome to avoid an oncoming bus.  Moreover, the reconstruction photograph shows her at the corner of the vehicle, with a clear avenue to walk to the area behind the Escalade.  Plaintiff admits that she had 5.33 seconds to take these few steps away from the path of the bus.  As a matter of law, that  was  enough time to step around the corner of the Escalde to a position of safety.  No reasonable jury could conclude otherwise.

B.    <u>Plaintiff's Contentions Related to the Negligence of the Bus Operator Are Immaterial to Defendant's Motion for Summary Judgment.</u>

Plaintiff's opposition expends considerable effort addressing the alleged negligence of WMATA's bus operator, Brenton Fairnot, for not observing and not taking any action to avoid striking Ms. Walters. Opp. at 1-6. WMATA's motion raises only two issues: (1) Ms. Walter's contributory negligence as a matter of law in not yielding the right-of-way to WMATA's approaching bus, in violation of 18 D.C.M.R. §2304.2, and (2) the unavailability of the last clear chance doctrine because Plaintiff cannot prove decedent was oblivious to the danger of the approaching bus and unable to

4

extricate herself from that danger by simply stepping a few feet from its path in the 5.3

seconds she was standing in the travel portion of the street before the collision.

Therefore,  the alleged primary negligence of the bus operator and arguments

regarding his ability to observe and avoid striking decedent, including lighting, visibility,

size of the road, maneuvering room, awareness of danger of pedestrian movements

are irrelevant to the issues raised in WMATA's motion.

WMATA's Standard Operating Procedures do not establish the applicable

standard of care for Angel Walters.  As the D.C. Circuit held in Briggs v.WMATA, 481
F.3d 839, 848 (D.C. Cir. 2007) :

> "Nor can [Briggs] prevail on the basis of the provisions in the [WMATA
> manuals] . . . . " Varner, 891 A.2d at 269.  The D.C. Court of Appeals has
> held that such internal policies – standing alone – cannot demonstrate the
> applicable standard of care. See Clark, 708 A.2d at 636-37 ("In essence,
> plaintiff's case here is based upon the proposition that the District
> deviated from its own Plan. That is simply not enough."); see also Varner,
> 891 A.2d at 269-70; WMATA v. Young, 731 A.2d 389, 398 (D.C. 1999)
> ("[C]ompany rules are not 'conclusive' or 'wholly definitive' . . . .") While
> internal regulations may be "admissible as bearing on the standard of
> care," admission at trial of the WMATA manuals alone would be
> insufficient, "because expert testimony [would still be] required to establish
> that the [manuals] . . . embod[y] the national standard of care and not a
> higher, more demanding one."  Clark, 708 A.2d at 636; see also Rajabi,
> 650 A.2d at 1322 (holding that a contractual "maintenance schedule itself
> did not define the standard of care")."'To hold otherwise would create the
> perverse incentive for [WMATA] to write its internal operating procedures
> in such a manner as to impose minimal duties upon itself in order to limit
> civil liability rather than imposing safety requirements upon its personnel
> that may far exceed those followed by comparable institutions.'" Arnold &
> Porter, 756 A.2d at 435 (quoting Clark, 708 A.2d at 636); see Varner, 891
> A.2d at 272 ("Aspirational practices do not establish the standard of care
> which the plaintiff must prove in support of an allegation of negligence").

Therefore, WMATA's internal rules, protocols, or guidelines, do not define

the standard of care applicable to WMATA.   A fortiori, they could not define the

standard of care required to be exercised by Ms. Walters, whose duties and obligations as a pedestrian crossing a street are defined by District of Columbia regulation and common law, discussed at Part D  below.

     C.    <u>WMATA's Duty, However It Is Evaluated, Did Not Relieve Decedent Angel Walters of Her Duty to Exercise Reasonable Care for Her Own Safety</u>.

Plaintiff argues that decedent was not crossing the street at the time she was struck, but was actually yielding the right-of-way to the approaching bus by stopping in the travel portion of the street waiting for the bus to pass her. She argues Ms. Walters relied upon a belief that the bus operator would observe her standing in the street, and take the precautions necessary to safely pass her. This argument is without merit.

First, there is no evidence whatsoever regarding what decedent Angel Walters was or was not thinking (or assuming) as she stood in the travel lane facing the oncoming bus, before she was struck by the passing bus.  Plaintiff's attempt to surmise what she was thinking is pure and improper speculation, unsupported by the record. Second, plaintiff does not dispute that decedent was stopped and standing in the travel portion of the street for at least 5.3 seconds before the collision.  Third, plaintiff does not dispute that, at the time Ms. Walters was struck, she was proceeding to her apartment directly across the street from where the Escalade was parked to deliver the apartment furnishings she was carrying at the time of the collision.  Nor does plaintiff dispute that Ms. Walters could readily observe the approaching bus.  Plaintiff's expert David Plant concedes that the bus was visible to Ms. Walters and nothing prevented Ms. Walters from continuing to cross the street during the 5.3 seconds that elapsed between the time she stopped in the bus's path and the collision. Plant Dep. at 48, 57,

88-90.

> D.    Angel Walters Failed to Yield the Right of Way to the Bus, and Therefore is Contributorily Negligent As A Matter of Law.

Entering and stopping in the travel portion of the road constitutes not yielding the right of way to vehicles traveling in the road under 18 D.C.M.R. § 2304.2.  Yielding the right a way requires a pedestrian to stand back out of the way.  Yielding does not mean waiting in the favored vehicle's path of travel.  In the District of Columbia, "Each pedestrian crossing a roadway at any place other than within a marked crosswalk, or within an unmarked crosswalk at an intersection, shall yield the right-of-way to all vehicles upon the roadway." 18 D.C.M.R.  Vehicles and Traffic  § 2304.2 .  The duty of a pedestrian to yield the right of way to vehicles upon the roadway when crossing a street at any point other than a crosswalk is statutorily mandated in a majority of jurisdictions.[2]

When crossing a street, a pedestrian must make reasonable observations to

---

[2]  See, e.g., **Alabama**: Motor Vehicles and Traffic §32-5A-212; **Arizona**: Transportation §28-793; **California**: Vehicle Code §21954; **Connecticut**: Motor Vehicles §14-300b; **Delaware**: Motor Vehicles §4143; **Florida**: Motor Vehicles §316.30(10); **Georgia**: Motor Vehicles and Traffic §40-6-92; **Hawaii**: Motor and Other Vehicles §291C-73; **Idaho**: Motor Vehicles §49-704; **Illinois**: Vehicles §625 ILCS 5/11-1003; **Indiana**: Motor Vehicles §9-21-17-7; **Kentucky**: Motor Vehicles §189.570; **Louisiana**: Motor Vehicles and Traffic Regulation §32:213; **Maryland**: Transportation §21-503; **Minnesota**: Motor Vehicles §169.21, Subdivision 2; **Mississippi**: Motor Vehicles and Traffic Regulation §63-3-1105; **Missouri**: Motor Vehicles §300.390; **Nebraska**: Motor Vehicles §60-6,154; **Nevada**: Public Safety §484.327; **New Hampshire**: Motor Vehicles §265:36; **New Jersey**: Motor Vehicles and Traffic Regulation  §39:4-36; **New York**: Vehicle & Traffic §1152; **North Carolina**: Motor Vehicles §20-174; **North Dakota**: Motor Vehicles §39-10-29; **Ohio**: Motor Vehicles §4511.48; **Oklahoma**: Motor Vehicles §11-503; **Pennsylvania**: Vehicles §3543; **Rhode Island**: Motor and Other Vehicles §31-18-5; **South Carolina**: Motor Vehicles §56-5-3150; **Tennessee**: Motor and Other Vehicles §55-8-135; **Utah**: Motor Vehicles §41-6a-1003; **Vermont**: Motor Vehicles §1052; **Washington**: Motor Vehicles §46.61.240; **Wisconsin**: Vehicles §346.25; **Wyoming**: Motor Vehicles §31-5-603.

learn the traffic conditions confronting her and to make a sensible decision whether it is reasonably safe to attempt the crossing.  Roberts v. Capital Transit Co., 131 F.2d 871, 872 (D.C. Cir. 1942) ("the traffic laws of the District of Columbia and the decisions of this court impose on a pedestrian crossing a street in the middle of a block the duty of looking to avoid being hit."); Garcia v. Bynum, 635 F. Supp. 745, 747-48 (D.D.C. 1986); Tyler v. Starke, 128 F.2d 611 (D.C. Cir. 1942); Miller v. Clark, 109 F.2d 677, 678 (D.C. Cir. 1940); Boaze v. Windridge & Handy, 102 F.2d 628, 630 (D.C. 1939); Faucett v. Bergmann, 22 F.2d 718, 719 (D.C. Cir. 1927).

Yielding the right ofway requires that a pedestrian look carefully in the direction from which she may anticipate the approach of vehicles immediately before venturing into the pathway of traffic.  Law v. Virginia Stage Lines, Inc., 444 F.2d 990, 993-94 (D.C. Cir. 1971); Horton v. Stoll, 3 Cal. App. 2d 687, 690, 40 P.2d 603, 604 (1935). She must stop, remain stationary, watch vehicles approach and wait for them to pass. Mitrovitch v. Graves, 25 Cal App. 2d 649, 78 P.2d 227, 231 (1938).

In Stroud v. Hansen, 48 Cal. App. 2d. 556, 120 P.2d 102 (1941), plaintiff-pedestrian, a 6-year old child, was injured while crossing a street not in a crosswalk when struck by defendant's motor vehicle.  The trial court entered judgment in favor of the defendant-driver.  Despite plaintiff-pedestrian's assertion that she had stopped near the center of the street in order to yield the right-of-way to defendant's motor vehicle, the appellate court held that

> Such hesitancy is not the yielding required of the pedestrian crossing a city street outside of a crosswalk.  The point at which the pedestrian must stop in order to maintain a safe position and to allow vehicular passage must be clearly outside the course of travel of approaching motor cars.

8

Id. at 562-56.

If a pedestrian sees an approaching motor vehicle by keeping a proper lookout in time to have taken precautions to avoid the motor vehicle striking her, she is required to step out of its way.  See Hammerbacher v. Babechenko, 348 Mich. 139, 152, 82 N.W.2d 456, 462-463 (1957).  The duty upon a pedestrian either standing or crossing a street is to be vigilant for her own safety and requires that she move out of the way of an approaching motor vehicle. See Andrukat v. Packard Lackawanna Auto Co., 27 A.2d 453, 455 (Pa. Super. 1942).

In Ortega v. State Farm Mut. Auto. Ins. Co., 295 So. 2d 593 (La. App. 1974), plaintiff-pedestrian was killed when struck by defendant's motor vehicle as he was crossing the street outside the crosswalk.  During the trial, the evidence showed that plaintiff-pedestrian was physically and mentally capable of observing the approaching motor vehicle and of taking some action to remove himself from the path of the oncoming car. The trial court entered judgement in favor of the defendant.  In affirming the judgment, the appellate court held that the evidence demonstrated that plaintiff-pedestrian was able to observe the defendant's car and to avoid stepping in front of it and had the ability to get out of its way before the car reached him. Id. at 597.  By placing himself in a position of peril by walking in front of an approaching motor vehicle, which plaintiff-pedestrian must have seen, and in stopping there and failing to move out of the car's path before it struck him, the appellate court held that plaintiff-pedestrian's negligence was a proximate and contributing cause of the accident, and therefore barred plaintiff-estate from recovery. Id. at 598.

9

In <u>Dean v. Allied Underwriters</u>, 11 So. 2d 93 (La. App. 1942), plaintiff-pedestrian was injured when struck by defendant's truck as he was standing in the roadway flagging down the on-coming truck.  The trial court dismissed plaintiff-pedestrian's lawsuit.  Affirming the trial court's dismissal of plaintiff-pedestrian's suit, the appellate court held that plaintiff was guilty of the "grossest kind of contributory negligence" which was a contributing cause of the accident.  <u>Id</u>. at 95.  "If plaintiff-pedestrian continued to stand in his same position, it should have been obvious that the truck would strike him unless he stepped back or the truck pulled to its right." <u>Id</u>.  A person who stands in the traffic lane of a traveled road and sees an automobile approaching him on its proper side of the road and makes no effort to get out of the way under the assumption that the approaching vehicle will stop or miss him is assuming too much and taking too much of a chance for his own safety.  <u>Id.</u>

Failure to yield the right-of-way to vehicular traffic while crossing in the middle of the block is contributory negligence as a matter of law. <u>Law v. Virginia Stage Lines, Inc.</u>, 444 F.2d at 994; <u>U.S. F. & G. v. Royer</u>, 230 Md. 50, 185 A.2d 341 (1962).

In <u>Law v. Virginia Stage Lines, Inc.</u>, plaintiff-pedestrian was injured when struck by defendant's bus as he was crossing Eye Street, N.W., in the middle of the block.  Plaintiff-pedestrian testified that he looked, but did not see the oncoming bus as he started to cross the street.  Despite defendant bus company's motions for directed verdict, the trial court sent the case to the jury, which returned a verdict in favor of the plaintiff-pedestrian.  Thereafter, the trial court granted the defendant-bus company's motion for judgment notwithstanding the verdict.  Affirming the trial court's entry of JNOV, the D.C. Circuit held that plaintiff-pedestrian's evidence was conclusive of

10

"patent negligence" on his part, citing 18 D.C.M.R. <u>Vehicles and Traffic</u> § 2304.2. ("Crossing at Places Other Than Crosswalks"). The Court of Appeals further held that the trial court would have been fully justified in granting the motion for directed verdict at the close of plaintiff-pedestrian's case.

In <u>Robinson v. District of Columbia</u>, 580 A.2d 1255 (D.C.1990), plaintiff-pedestrian was injured when struck by defendant-government's van as she was crossing Third Street, N.W. without using visibly marked crosswalks on either side of her location. Plaintiff-pedestrian had observed the van beforehand; however she assumed its operator would see her. She did not see the van before it struck her because she was looking in the opposite direction for oncoming traffic. The trial court directed a verdict in favor of the defendant on the issue of plaintiff's contributory negligence in that she had violated 18 D.C.M.R. <u>Vehicles and Traffic</u> § 2304.1 [3] The D.C. Court of Appeals, however, held that plaintiff was negligent <u>per se</u> in that she made no attempt to comply with the law. 580 A.2d at 1257.

It is undisputed that Angel Walters was in the process of crossing the street on the way to her new apartment directly across from where the Escalade was parked; that she stopped and stood in the travel lane of the street for at least 5.3 seconds, with a clear view of the approaching bus coming from her left, and did nothing to remove herself from its path. She clearly did not yield the right of way to the approaching bus and violated 18 D.C.M.R. § 2304.2. She is therefore contributorily negligent as a

_____

[3] 18 D.C.M.R. Vehicles and Traffic § 2304.1 provides that, "Between adjacent intersections controlled by traffic control signal devices or by police officers, pedestrians shall not cross the roadway at any place except in a crosswalk."

matter of law.

     E.    The Doctrine of Last Clear Chance Is Inapplicable To This Case.

          1.  Concurrent negligence is a bar to the Doctrine of Last Clear Chance

Although the D.C. Court of Appeals has assumed, without deciding,  that concurrent negligence is an exception to the Last Clear Chance Doctrine in District of Columbia v. Roninson, 644 A.2d 1004,1006  (D.C. 1994), a careful review of decisional law shows that the Court of Appeals has never definitively ruled on the subject.  In such a case, this Court should look to the law of Maryland, from which the District of Columbia draws its common law and to which it looks first for precedent.  See Conesco Industries, Ltd. v. Conforti Andeisele, Inc, 627 F.2d 312, 315 (D.C. Cir. 1980).[4]

The D.C. Court of Appeals has already recognized Maryland law on the subject. In Hall v. Hague, 257 A.2d 221 (D.C. 1969), the D.C. Court of Appeals, in a thorough discussion of Maryland law on the issue, held that the existence of concurrent negligence barred the application of last clear chance in the case of a Maryland motor vehicle accident.

Maryland law further recognizes that "whenever a motor vehicle has the right of way, it is negligence as a matter of law for a pedestrian to leave a place of safety for a position of danger without looking at approaching traffic."  United States Fidelity and Guaranty Co. v. Royer, 185 A.2d 341,343  (Md. 1962).  Thus, in instant case, Ms.

---

    [4]     Judge Farrell cited Robinson for the proposition that the "so called 'concurrent negligence' of plaintiff [defeated] last clear chance" in his concurring opinion in District of Columbia v. Huysman, 650 A.2d 1323, 1327 (D.C. 1994).

Walter's act of stepping into and remaining in the travel portion of the roadway is contributory negligence as a matter of law, and is concurrent negligence that bars the application of last clear chance.

2.    Plaintiff's argument on the application of last clear chance is incorrect.

Plaintiff's reliance upon WMATA v. Young, 731 A.2d 389 (D.C. 1999) and Felton v. Wagner, 512 A.2d 291 (D.C. 1986) is misplaced.  Both decisions support WMATA's motion for summary judgment.

In WMATA v. Young, a suddenly turning bus struck and injured a bicyclist.  Mr. Young testified that he saw the bus ahead of him at an intersection, and traveled along the right side of the bus without slowing, unaware of the bus's turn signal and disregarded the bus's movement to initiate a sharp, right turn.  The court noted:

> The bus then made a sudden sharp turn into the northern-bound lane of 29th Street, cutting across Young's path in the curb lane.  Young tried to avoid the bus by braking and turning to the right, but he was unable to elude its continuing encroachment, and his bicycle struck the middle of the right side of the bus.

731 A. 2d at 391.  Evidence supported the jury's conclusion that the bicyclist was trapped between the bus and the curb, and that he had no means of escape, other than possibly jumping the curb, to avoid the bus's "sudden" or "abrupt" sharp turn. Id. at 391-93.  A witness observed that the bicyclist could not have done anything to avoid the collision.  Id. at 392.

In Young, the court of appeals was not required to decide whether the plaintiff was contributory negligent as matter of law, because at trial the jury found that he was. Id. at 391. However, the court found that, under established District of Columbia precedent, Mr. Young was clearly contributorily negligent as a matter of law. Id. at 394,

13

citing <u>Washington v. A & H Garcias Trash Hauling Co.</u>, 584 A.2d 544 (D.C. 1990). The <u>Young</u> court's discussion of <u>Washington</u> is instructive. 731 A.2d at 394.

In <u>Washington</u>, the court found contributory negligence as a matter of law where a bicyclist essentially miscalculated the movements of a truck that suddenly turned in front of him. It found that the bicyclist was "fully chargeable with the knowledge that when the truck reached M Street on a green light and proceeded into the intersection, it would either go straight ahead or turn onto M. Street. The bicyclist, for his own safety, was obliged to pay close attention to the movements of the truck, and to anticipate the possibility that it might turn right, toward the bicycle . . . ." 584 A.2d at 546, quoted in <u>Young</u>, 731 A.2d at 394. In that context, the <u>Young</u> court affirmed its precedent that last clear chance only applies if the defendant has a superior opportunity to avoid the accident. <u>Phillips v. D.C. Transit System, Inc.</u>, 198 A.2d. 740 (D.C. 1964).

> The [last clear chance] doctrine presupposes a perilous situation caused
> by the negligence of both the plaintiff and the defendant; it assumes that
> after the situation has been created there was time when the defendant
> could, and the plaintiff could not, avoid the accident.

<u>Young</u>, 731 A.2d. at 394, citing <u>Griffin v. Anderson</u>, 148 A.2d. 713, 714 (D.C. 1959).

As this discussion relates to WMATA's motion for summary judgment, Angel Walters was clearly contributory negligent as a matter of law, because the record establishes that she stood in the travel portion of the road, and delayed for 5.3 seconds in the process of crossing the street to reach her apartment, without giving right of way to the oncoming bus. There is no allegation that she was not aware of, and attentive to, the bus as its come toward her. To the contrary, plaintiff contends

14

that Ms. Walters was aware and attentive. Opp. -10 ("Ms. Walters was aware of the approaching Metrobus as evidenced by the 5.3 seconds she waited by the Escalade prior to the bus striking her.")   As with the bicyclist in <u>Washington</u>, Ms. Walters is "fully chargeable" with knowledge of the movements of the bus as it proceeded toward her. The plaintiff could have avoided the collision by stepping backwards and behind the Escalade.

Setting aside the impermissible speculation concerning the decedent's evolving state of mind, plaintiff has no evidence that she was oblivious to the danger of the oncoming bus, or unable to extricate herself from the position of danger.  <u>Young</u>, 731 A.2d 394-95.  In <u>Young</u>, the court of appeals stated more than once that its decision affirming the judgment, and approving the last clear chance instruction, was a very close call on evidence "far from overwhelming."  <u>Id</u>. at 390, 396, 398.  The court held:

> Our holding today is a narrow one, dependent upon the particular facts of this case and should not be read as a retreat from anything we said in <u>Washington v. A & H Garcias Trash Hauling, Co.</u>  In <u>Washington</u>, we held, on facts very similar to those presented here,  that the plaintiff bicyclist was contributorily negligent as a matter of law.

<u>Id</u>. at 398.   On the second element of last clear chance, there was scant (and barely sufficient) evidence, despite Mr. Young's best efforts to brake his bike and turn to the right, he was effectively pinned between the sudden movement of bus and the curb, and  Young had no avenue of escape during the seconds available for any evasive action.  <u>Id</u>. at 391-392, 396 (Testimony of Young and Morgan).

> We are reluctant to suggest that Young was oblivious to the danger posed by the bus **. . .**  The specific danger posed by the bus was not obvious until it abruptly turned right, but any vehicle as big as a bus poses a threat to smaller vehicles, especially bikes.

371 A.2d at 396.  The court found sufficient evidence that Young's ineffective attempt to brake and turn to the right, while he was caught between the suddenly encroaching bus and the curb, was sufficient, although "not strong", evidence that his position of peril was "inextricable".[5]  Young represents the edge of the envelope on the Last Clear Chance doctrine under District of Columbia law.  In the instant case, plaintiff cannot argue that Ms. Walter's peril compares with the evidence in Young.  No physical barrier prevented her from stepping out of the bus's path of travel, and the movement of the bus was constant in its steady progress toward her, at a lawful 15-20 miles per hour.  According to her own reconstruction expert's photograph, she could easily have stepped toward and behind the Escalade in a matter of a second or two.  As the photographs taken by the police immediately following the accident make clear and undisputable, the snow or ice on the street did not prevent or obstruct her step back.  As close as the case was for the D.C. Court of Appeals in Young, this case is not close.  Ms. Walters was neither oblivious nor in an extricable position of peril.

Plaintiff's reliance upon Felton v. Wagner is also misplaced.  In Felton, the D.C. Court of Appeals affirmed the trial court's refusal to give the last clear chance instruction.  Ms. Felton testified that she was crossing, standing in the middle of opposing lanes of moving cars, and that she "froze" when Ms. Wagner's vehicle suddenly appeared from around a truck.  512 A.2d at 293.   The court concluded that

---

[5]  WMATA is reluctant to cite to a dictionary to make its point regarding the weight of the word, "inextricable"; however, in this case, it bears mentioning that the word means, "incapable to being untangled or untied," "too complicated or intricate to solve," "impossible to escape or get free of."  Webster's II New College Dictionary (1999).

16

the plaintiff satisfied the second element of last clear chance on the basis of the

following evidence:

> The second element was also proven by Mrs. Felton's testimony that
> when she first started crossing the street, she did not see Mr. Wagner's
> car coming, but when she looked to her left a second time and did see
> his car, she froze in place.  Thus she was at first unaware of her position
> of danger and then unable to extricate herself.

Id. at 297.  Plaintiff has no evidence that Ms. Walter's "froze", rather than simply

miscalculated and misjudged the movement or position of the bus as she watched it

approach her position.[6]  Tragically, decedent will not testify at this trial.  Setting aside

plaintiff's impermissible speculation that Ms. Walter's "froze", rather than simply

misjudged the bus's movement in her direction, the bus did not appear suddenly as it

traveled around another vehicle.  The Felton court certainly would not have found the

second element of last clear chance satisfied if Ms. Felton instead had observed Ms.

Wagner's car traveling down the street as she stood improperly in the middle of

opposing lanes of moving cars.

    In Phillips v. D.C. Transit, the D.C. Court of Appeals affirmed a directed verdict in

favor of the bus company.  There, the court found that, even allowing the primary

negligence of the bus operator, the plaintiff was contributorily negligent as a matter of

law, because Ms. Phillips failed to effectively look  and heed the oncoming bus. 198

A.2d 740.  The court stated that primary negligence must be followed by an

---

    [6]  There is no evidence from any witness to the accident or any accident
reconstruction expert that the bus moved in any direction other than forward in its lane
of travel prior to striking Ms. Walters.  There is no evidence that the bus veered from its
straight path of travel or moved closer to the curb as it arrived at Ms. Walter's position.

17

independent failure of the defendant, with a "superior opportunity to avoid the accident." Although <u>Phillips</u> focused on the limited opportunity the bus operator had to realize plaintiff's peril and avoid the collision, it is reasonable to apply the principle of "superior opportunity" to the second element as well. <u>See</u> <u>Young</u>, 731 A.2d at 395 (Four elements of last clear chance are inter-related.) Ms. Walter's inexplicable failure to step out of the traveled area of the road, and out of the path of the oncoming bus, under circumstances where the reconstruction firmly established her posture of attention, looking down the road in the direction of the bus, established her "superior opportunity" to avoid the collision.[7]   For whatever reason, the bus operator never saw Ms. Walter's standing in the street.

In <u>WMATA v. Johnson</u>, 726 A.2d 172 (D.C. 1999) (<u>en banc</u>), the D.C. Court of Appeals, considering the difficult question of whether last clear chance is applicable to a suicide, stated the following:

> [T]here is widespread authority for the principle that when the plaintiff and the defendant are equally at fault, "the law leaves both parties where it finds them." Thus, the Restatement (Second) of Torts § 530 (3) (1965) provides:
>
> > A person whose conduct is in reckless disregard of [her] own safety is barred from recovery against a defendant whose reckless disregard is a legal cause of the plaintiff's harm.

<u>Id</u>. at. 176.

All of these cases, <u>Young</u>, <u>Washington</u>, <u>Phillips</u>, and <u>Johnson</u>, strongly indicate

---

[7]  <u>Cf</u>. <u>WMATA v. Johnson</u>, 726 A.2d 172, 175 (D.C. 1999)(en banc), where the D.C. Court of Appeals suggested that last clear chance is inapplicable to assumption of the risk. ("Because she elects to proceed in the face of a known danger, the plaintiff is regarded as having consciously relieved the defendant of any duty which he otherwise owed the plaintiff."), citing <u>Sinai v. Polinger Co.</u>, 498 A.2d 520, 524 (D.C. 1985).

how reticently and stringently the District of Columbia Court of Appeals applies the Doctrine of Last Clear Chance. Without evidence from Angel Walters regarding why she continued to stand in the travel portion of the Congress Street positioned to observe the oncoming bus, or why she simply did not step backwards to avoid the bus, the only fair inference is that she simply misjudged the bus's movements and held her position until she was struck.

Plaintiff argues that decedent was oblivious to the danger of the approaching bus because she assumed the operator would observe her standing in the street and take the necessary action to safely pass her. She argues Ms. Walters had no reason to believe she was in a position of peril until she realized at the last second that the bus was not deviating from its path and going to strike her. Opp. at 10. Plaintiff does not argue that decedent did not, or could not, observe the approaching bus (Opp.-10), or that a person standing in the street would be oblivious to the obvious danger posed when an approaching 40-foot bus. Plaintiff's argument that Ms. Walters was somehow oblivious is unavailable under Young, 731 A.2d at 396 and Washington, 584 A.2d at 546. Plaintiff has no factual basis, other than impermissible speculation unsupported by the record, regarding what decedent might have been thinking or assuming as the bus approached. Even if Angel Walters was available to testify, she would be unable to describe what the bus operator observed as he approached her position in the street. It is undisputed that the bus operator never saw Ms. Walters and, therefore, took no evasive action.

Plaintiff does not dispute that decedent had normal sight and hearing, and was not in anyway disabled. Further, she does not dispute the 40-foot approaching bus

19

was well-lit, with a diesel engine, which is louder than a normal automobile engine, and that Ms. Walters had an unobstructed view of the approaching bus. <u>See</u> Plant Dep. at 48, 86-88.

Plaintiff argues that Ms. Walters was unable to extricate herself from her position of danger because, had she attempted to step back out of the travel lane of the road, she would have stepped onto the ice/snow along the left side of the Escalade. Opp. at 5-6. Plaintiff's opposition also suggests that Ms. Walters was trapped somehow because she was standing next to the parked Escalade during the 5.3 seconds leading up to the collision. Opp. at 1, 6, 8, 10, and 13. This argument should not suggest that the bus contacted the snow along the left side of the Escalade, because there is no support in the record for that inference. Plaintiff's own expert, David Plant, opines there is no evidence that the passing bus ever touched the snow/ice or contacted the Escalade. Plant Dep. at 86. Mr. Plant has opined that Ms. Walters was standing 2 to 3 feet from the left side of the Escalade. ("Ms. Walters, at impact, was located in the street and was approximately 2 to 3 feet from the left side of the Escalade when she was struck by the front of the bus.") Plant Report at 6. The snow and ice extended approximately 1.5 feet from the left street side of the Escalade into the street. Chewning/Partenheimer Report at 4; Partenheimer Dep. at 49-50.

There is no evidence that, assuming Ms. Walter's attempted to move back from the street to avoid the passing bus, she would have been obstructed by the snow or ice on the road. There is no evidence decedent had any difficulty with snow or ice from the time she exited the Escalade, retrieved her packages from the rear, and walked into the street, to stand at the position 2-3 feet from the left side of the Escalade.

20

There is no record support that the snow and ice created a barrier to Ms. Walter's movements. As opined by Defendant's expert, William Partenheimer, "If she walked across the ice, then she would have had to – she would had either have had to step on it to get over where she was, or she would have stepped over. Either form or fashion, she should have been able to do what she did to get out of there." Partenheimer, Dep. at 51. As the police photographs show clearly, there was ample room for decedent to move away from the path of the oncoming bus to a place of safety beside or behind the Escalade. See Exhs. 10A and 10B. Plaintiff's expert David Plant agreed that Ms. Walters would have only had to take a "couple of steps" to avoid being struck by the passing bus, and that she was capable of walking 4 to 5 feet per second. WMATA's Motion at 3-4; Plant Dep. at 89. She had both the ability and opportunity to extricate herself from her position of danger, but inexplicably did not do so.

Therefore, the doctrine of Last Clear Chance is inapplicable to this case.

<u>CONCLUSION</u>

For the reasons stated in the motion for summary judgment and supporting memorandum of points and authorities, and this reply, defendant WMATA requests this Court to enter summary judgment in its favor and to dismiss the complaint, with prejudice.

Respectfully submitted,

WASHINGTON METROPOLITAN AREA
  TRANSIT AUTHORITY

Mark F. Sullivan, #430876
Deputy General Counsel

_____/s/_____
Fredric H. Schuster, #385326
Associate General Counsel

_____/s/_____
David J. Shaffer, #413484
Assistant General Counsel
600 Fifth St., N.W.
Washington, D.C. 20001
(202) 962-2560

CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of August, 2008, a  true copy of the

foregoing Reply was electronically served on:

Paul J. Maloney
Kelly M. Lippincott
Carr Maloney
1615 L Street, N.W.
Suite 500
Washington, D.C. 20036-5652


___/s/_____
Fredric H. Schuster

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GLADYS CLAUDETTE SUTTON       :

                     :

       Plaintiff,          :

                     :

     v.                :     Case No. 07–1197 (JDB)

                     :

WASHINGTON METROPOLITAN    :

AREA TRANSIT AUTHORITY       :

                     :

       Defendant.        :

## WMATA'S ADDITIONAL EXHIBITS ATTACHED TO ITS REPLY MEMORANDUM

Exhibit 5A:12/4/07 Excerpt David Plant Deposition. Add page 49.

Exhibits 11 A and B: 2/17/07 Accident  Scene Photographs.

Respectfully submitted,

_____/s/_____

**Fredric H. Schuster, #385326**
**600 Fifth St., N.W.**
**Washington, D.C. 20001**
**(202)-962-2560**
**Counsel for Defendant  WMATA**

**Capital Reporting Company**

Page 1

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA

-----------------------------x

GLADYS CLAUDETTE SUTTON,          :

       Plaintiff,              :

v.                                : Civil Action No.:

WASHINGTON METROPOLITAN           : 07:1197

AREA TRANSIT AUTHORITY,           :

       Defendant.              :

-----------------------------x

Washington, D.C.

Friday, December 14, 2007


Deposition of:


DAVID PLANT

called for examination by counsel for Defendant,

pursuant to notice, at Washington Metropolitan Area

Transit Authority, 600 Fifth Street, Northwest, Suite

2D, Washington, D.C., before Gervel A. Watts of Capital

Reporting, a Notary Public in and for the District of

Columbia, beginning at 10:04 a.m., when were present on

behalf of the respective parties:



## Capital Reporting Company

Page 49

1      A    That's what I would call the area of impact.

2   It's certainly right around that area.  There is a

3   location where Ms. Kirkland can see Ms. Walters and it

4   is a position that is almost even with the back-end of

5   the Escalade; it is slightly forward of that.  Based on

6   my review of all the evidence, that would be my opinion

7   as to the area of impact where Ms. Walters was located

8   at the time of the collision of the bus.  That position

9   is measured in exhibit eight.

10     Q    Where would that be reflected on exhibit

11  eight?

12     A    It's highlighted with word, "pedestrian

13  position."  There is a one and a two.  The one

14  represents the area of impact.  The two would be where

15  Ms. Walters would be essentially stepping out from the

16  snow covered area onto the street.

17     Q    Under the two is an X.  I have circled on

18  Plant Exhibit 8, a reference to a number two and then

19  there's an X under it and that represents where Ms.

20  Walters was standing on the ice?

21     A    It's essentially the transition area.  I mean,

22  it's right around that area.



