## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GLADYS CLAUDETTE SUTTON,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No.  07-1197 (JDB)** |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

Presently before the Court are three motions in limine filed by defendant WMATA to exclude certain evidence at trial.  For the reasons explained below, each of defendant's motions -- [17] [18] [19] -- will be granted.

1.  Plaintiff offers Dr. Joan Kinlon to provide expert medical testimony relating to damages recoverable under the D.C. Wrongful Death Act, D.C. Code § 16-2701, in three areas: (1) post traumatic stress syndrome (PTSD) allegedly suffered by Aubria Walters from the aftermath of the accident and the loss of her mother; (2) damages Aubria Walters may suffer if custody is awarded to her biological father; and (3) loss of care, education, training, guidance and parental advice that her mother would have given Aubria Walters.  There is no recovery available under District of Columbia law for grief or emotional distress, or loss of parent-child consortium, when a child experiences the loss of a parent through the negligent act of another.  Herbert v. Dist. of Columbia, 808 A.2d 776, 779 n. 3 (D.C. 2002); Runyon v. Dist. of Columbia, 463 F.2d 1319, 1322 (D.C. Cir. 1972); Saunders v. Air Florida, Inc., 558 F. Supp. 1233, 1235 (D.D.C.

1983); see also D.C. Standard Civil Jury Instruction 14.05.  The D.C. Wrongful Death Act is strictly construed, see Joy v. Bell Helicopter Textron, Inc., 999 F.2d 549, 565 (D.C. Cir. 1993), and given that grief and emotional distress are not recoverable damages under the Act, it stands to reason that any resulting PTSD is likewise not recoverable.  The claim for damages based on a possible custody award to the biological father, who allegedly is an unfit parent, is too speculative at this time and, in any event, would turn more on a legal than a medical assessment. Finally, although loss of services (e.g., care, education, training and guidance) is recoverable, plaintiff will be presenting ample first-hand lay testimony from those who have known both Aubria Walters and her deceased mother well over many years; the testimony of a medical expert based on a few hours with Aubria will not assist the trier of fact on this subject, which is within the knowledge of lay persons (i.e., the jury).  See Fed. R. Evid. 702.

2.  Plaintiff wishes to introduce a 911 emergency communication recording of a lay witness's observations of the decedent immediately following the accident.  The evidence would, plaintiff asserts, be relevant to determining the period of conscious pain and suffering for which damages are recoverable.  Conceding that the conversation between the 911 operator and the witness on the scene may constitute a present sense impression or excited utterance, and therefore come within the hearsay exceptions in Fed. R. Evid. 803(1) & 803(2), defendant nonetheless contends that the evidence should be excluded under Fed. R. Evid. 403 because the probative value is substantially outweighed by the risk of unfair prejudice or confusion.  The eyewitness will be called at trial to testify as to her personal observations.  The tape can be utilized by the medical experts who will testify.  The recording is largely the very emotional reactions of the eyewitness to the accident, which could unfairly prejudice defendant, confuse the

issues at trial, or mislead the jury. And to the extent plaintiff wishes to admit a lay opinion that the decedent exhibited signs of conscious pain and suffering, that testimony is inadmissible under Fed. R. Evid. 701 because it is "based on scientific, technical, or other specialized knowledge within the scope of Rule 702" dealing with expert testimony. In other words, medical testimony is needed to establish whether the decedent was capable of consciousness and could feel pain, and it is these expert witnesses, not the tape of a lay witness's observations, that are relevant to the damages determination. Hence, the tape recording of a highly emotional lay witness will be excluded under Rule 403 given its low probative value and high risk of prejudice or confusion.[1]

3. Finally, plaintiff wishes to admit testimony from a vocational rehabilitation expert, Joseph Rose, and a labor economist, Jerome Staller, Ph.D., to project lost earnings for the decedent, Angel Walters, as a registered nurse. Defendant contends that the factual assumptions in support of the expert opinions and calculations are "rampant speculation" and hence the testimony is inadmissible. See Joy, 999 F.2d at 568; WMATA v. Davis, 606 A.2d 165, 177-79 (D.C. 1992); In re Air Crash Disaster at New Orleans, 795 F.2d 1230, 1233 (5th Cir. 1986). Based on a careful review of the facts, the Court concludes that there is not a sufficient factual basis to support the expert conclusion that the decedent would have earned a nursing degree and become a registered nurse or even obtained a licensed practical nurse (LPN) certificate. She had not indicated an interest in becoming an LPN or applied to the certificate program prior to her death; rather, she had only indicated an interest in a two-year program at the University of the District of Columbia that, if completed, could lead to becoming a registered nurse. But she had

---

[1] The Court will, however, permit plaintiff to introduce a transcript of the 911 recording, with redactions of specific, highly prejudicial segments of the tape.

not applied for, much less been accepted into, UDC's nursing program; she had only indicated a general interest in a nursing major; she had a poor high school record (cumulative GPA 1.62); she was accepted into UDC under an "open admissions" policy and initial testing required her to take multiple remedial courses before beginning any college-level courses; and at the time of her death Ms. Walters was a part-time evening student who had taken only three weeks of initial remedial classes.[2]  The proffered expert opinions of Mr. Rose and Mr. Staller will therefore not be admitted.[3]

Accordingly, it is therefore **ORDERED** that, for the reasons stated above, defendant's motions [17] [18] [19] are **GRANTED**.

_/s/ John D. Bates_

JOHN D. BATES
United States District Judge

Date:  August 27, 2008

---

[2] The cases offered by plaintiff in an attempt to overcome the insufficiency and "rampant speculation" of the factual assumptions and support underlying plaintiff's expert opinions all involved some plausible evidentiary foundation for the expert opinion on future economic loss -- precisely what is missing here.

[3] Plaintiff's fall back argument that Angel Walters's work as a security guard would have led to a position as an account or portfolio manager is to no avail.  First, it represents an impermissible change in litigation strategy in a rebuttal expert report.  Second, Ms. Walters was the lowest level of security guard where the turnover rate was 300%.  Third, it is exceedingly rare -- i.e., speculative -- that one would rise from security guard to account or portfolio manager. And finally, Ms. Walters had said her long-term ambition was nursing.